*JAMES M. JACKSON v. JAMES H. HALL.

*Mortgagor and Mortgagee—Chattel Mortgage.*

A mortgagee who takes possession of personal property conveyed by a chattel mortgage, before default, is answerable to the mortgagor for the value of any reasonable use to which the property is or could have been put. But an injury to a crop resulting from the taking of a mule needed in its cultivation is too remote to be recoverable as consequential damages.

(*Morrison* v. *McLeod*, 2 Ired. Eq., 108; *Sledge* v. *Reid*, 73 N. C., 440, cited and approved.)

CIVIL ACTION tried at Fall Term, 1880, of ROCKINGHAM Superior Court, before *Eure, J.*

The defendant appealed from the judgment below.

No counsel for plaintiff.
*Mr. Thomas Ruffin*, for defendant.

SMITH, C. J. The plaintiff being indebted to the defendant in the sum of seventy-two dollars by bond on the 1st

---

*Ruffin, J., was of counsel and argued this case before his appointment as associate justice.

day of October, 1879, on the 14th day of May previous by deed of mortgage conveyed to the latter a black mare mule, carry-all and harness with certain other property, in trust to secure said debt, and with a power of sale in case of default after its maturity.   On July 17th, thereafter the plaintiff, his wife and daughter. were carried before a justice of the peace to answer a charge for forcible trespass on land, and the defendant finding the mortgaged articles in the street and the driver absent from them, took possession, and on the plaintiff's demand the next day refused to surrender unless he was paid sixty-two dollars which would be accepted in discharge of the debt.    They remained in the defendant's custody and care, unused except on one occasion when some water was hauled a short distance, until the 21st day of October, when they were sold under the mortgage for $73.75.

The action has for its object to charge the defendant with losses to the plaintiff's crop, caused by his deprivation of the means of its successful cultivation, the value of the use of the property while in defendant's possession, and the damage sustained for want of proper care.   Several issues were submitted to the jury which, without needless verbiage, with the response to each, are as follows:

1. What damage did the plaintiff sustain by the taking of the mule, carry-all and harness from his possession before the debt became due?   $30.

2. What injury did the property suffer during that time in value?   $5.

3. Was any and what sum included in the bond without consideration?   $10.

4. By how much do the proceeds of sale exceed the mortgage debt?   $12.

Upon the findings the court rendered judgment against the defendant for forty-seven dollars, from which he appeals on the ground that the defendant as mortgagee having title

and right of possession, is not answerable for any of the damages assessed.

The injury to the crop, resulting from the taking and keeping the mule needed in cultivating the land, is too remote to be recoverable as consequential upon the act if wrongful. *Sledge* v. *Reid,* 73 N. C., 440.

Interpreting the first issue, somewhat indefinite in terms, in the light of the instructions given to the jury, we understand the sum found in response, as intended to be an estimate of the value of the use or hire of the several articles while withheld by the defendant, irrespective of the fact of his use of them himself or deriving profit from their use by others. The charge was in effect that if when the defendant seized the property it was not exposed to peril of loss or injury impairing its value as a security, and the defendant had no reasonable grounds to believe it was so exposed, he would be liable to account for its use while so held at a reasonable value. While the defendant invaded no right of the mortgagor in taking and keeping possession until the day of default, whether the property was or was not in danger of being lost or injured, yet he was meanwhile acting as trustee bound to exercise that diligence and care expected of one in the preservation and management of his own property, and to account not only for profits actually received but for the value of any reasonable and prudent use to which it could have been put without detriment to the property itself, since he has as the verdict finds needlessly deprived the plaintiff of its use. We apply the remarks to the mule alone which could be moderately worked not only without injury but with advantage to it; and not to the other articles, the safe preservation of which alone devolved upon the mortgagee, and is the measure of his legal obligation. If he has made reasonable efforts to find employment for the mule and failed, this would be a defence to the claim. This rule of responsibility has been applied to the posses-

sion of slaves by the mortgagee and seems to be equally appropriate to horses trained to work and capable of earning remuneration.

Mr. Justice McLEAN, in *Bennett* v. *Butterworth*, 12 How U. S. 367, referring to a possession of slaves by the defendant, who held them to secure a present indebtedness and future advances, says : " The defendant having possession of the slaves and an entire control over them was bound to exercise a reasonable diligence in keeping them engaged in useful employments so as not only to pay their necessary expenses, but also to *obtain a reasonable compensation for their labor.*" " Certainly a mortgagee in accounting for the hire of a mortgaged slave," says the court in *Overton* v. *Bigelow,* 10 Yerger (Tenn.) 48, " is never charged a larger sum than could be procured for the slave by a contract which would create upon the part of the hirer all those duties and responsibilities, and it is difficult to see why the mortgagee should not be held to their performance." " If the mortgagee is in possession," remarks REEVES, J., in *Whitmore* v. *Parks,* 22 Tenn., 94, "so far from being entitled to the beneficial enjoyment of hire or rents and profits, he is liable to account for them to the mortgagor."

A recent author, quoting the language of Mr. Justice Mc-LEAN, says, " the doctrine established by the adjudicated cases is equally applicable to other property yielding an income to its owners, and includes horses within its operation." Hum. Chat. Mort., § 140. So in regard to land, Chief Justice RUFFIN declares : " Whatever may be the rule when a mortgagee enters into possession by receipt of rent of premises occupied by tenants, we conceive that when he enters by taking the actual possession and occupies himself, he makes himself tenant of the land, and *subjects himself to the highest fair rent* and becomes responsible for all such acts or omissions as would, under the usual cases, constitute claims on an ordinary tenant." *Morrison* v. *McLeod,*

2 Ired. Eq., 108. Again, while the defendant might properly refuse to surrender the articles, unless additional security was furnished for the debt or the safety of the goods, he had no right to demand a premature payment of the debt, and his retention under these circumstances imposed upon him the duty of so managing it as to render it reasonably remunerative to the owner. The issue however comprehends the carry-all and harness as well as the mule and the value of all is in one inseparable sum. We do not think any higher duty than the safe custody of the carry-all and harness was imposed, since such articles deteriorate and wear out by use, and the use may be injurious to the owner. The verdict must therefore be set aside and a new trial had.

The action is one for account, and the matters passed on by the jury are but items of it. These appropriately belong to a reference, but as the dispute is limited to a few points we have considered them as properly before us in the absence of exception. Let this judgment be certified.

Error.                                        *Venire de novo.*