STATE v. THOMAS J. WILSON.

*Forcible Entry.*

Although the entry be peaceable, yet if after getting on his premises, the defendant uses violent and abusive language, and threatens to strike, and does other acts, calculated to, and which do, intimidate the owner, it makes a case of forcible trespass.

INDICTMENT, tried before *Meares, Judge,* and a jury, at April Term, 1885, of the Criminal Court of MECKLENBURG county.

The defendant, along with another, was indicted for forcible entry on the lands of one J. C. Baker.

Said Baker, introduced as witness for the State, testified that he lived one mile and a half from Charlotte, and that he had a store in the corner of his yard, and that his residence was a few feet from the store; that on the evening of September 6th, 1884,

about dark, while in his store, he was informed that some persons wished to see him. Upon going to the door of his store, he found the prisoner, Wilson, and another person. Prisoner asked witness if he did not have a stray hog? Witness replied, "Yes," and told prisoner that he would show it to him, whereupon witness and prisoner left the store and went into the back lot of witness to his hog-pen, where he had impounded a stray hog, the pen being within a few feet of the residence of witness, and within his enclosure. When the parties reached the pen, the prisoner claimed the hog as his property, and asked witness his charges for impounding it, and paid him therefor. The prisoner then commenced to curse the witness, and was very abusive, threatening, and outrageous in his oaths. Witness then observed that the man who was with the prisoner, named Leedham, came near where the prisoner was standing, and joined in with him in cursing the witness. The witness ordered them to leave his premises, which they refused to do, but remained, and continued to use vile and abusive language to him, for fifteen minutes. That while prisoner and Leedham were cursing him and using abusive language towards him, prisoner drew back his right arm as if to strike him, but did not strike. After this, the prisoner put his hand in his pocket as if to draw a weapon, but witness saw no weapon, whereupon witness called and asked if there was any help in the store. The wife of the witness was standing in the porch, while prisoner and Leedham were cursing and abusing witness, and was badly frightened, and witness was intimidated by the conduct and language of prisoner and Leedham towards him. That after witness called for help, and was answered by a man in the store, when prisoner and Leedham took the hog and left the premises, cursing the witness.

On cross-examination witness stated, that during the cursing of witness by the prisoner, and before the witness had observed that Leedham was present, he began to let down the hog-pen, and the prisoner the fence. That during the quarrel, and after witness had ordered the prisoner and Leedham to leave, witness had used offensive language to them.

The wife of the witness Baker, was also introduced as a witness, by the State, and confirmed the statement of the first witness. She also stated that she was greatly alarmed and intimidated by the conduct and language of the prisoner and Leedham.

The prisoner introduced no evidence, but asked the Court to charge the jury, that the prisoner having gone upon the premises of Baker peaceably and at his invitation, even though a quarrel and fight should afterwards ensue, the prisoner would not be guilty of a forcible trespass, and upon the whole testimony the State had failed to make out a case of forcible trespass.

The Court refused to instruct the jury as prayed by the prisoner, and instructed them, that the offence of forcible trespass occurred, when there was an invasion of a person's possession, he being present, accompanied with such violence as was necessary to intimidate him, or as was calculated to produce a breach of the peace; but that mere words, however abusive or threatening, unless accompanied by a display of overpowering numbers, or some outward acts, would not constitute the offence.

The Court, after stating the facts relied on by the State, as tending to intimidate or bring on a breach of the peace, and calling attention to two overt acts, proved by the witness, to-wit: the drawing back the right hand in the attitude of striking, and the act of running his hand in his pocket, as if to draw a weapon, continued : "Although the prisoner entered the premises peaceably in the first instance, yet if in a little while, he and Leedham used violent and abusive language towards Baker, and Baker then ordered them off his premises, and they refused to go, and remained and continued to use violent and abusive language to him for more than fifteen minutes, and Baker was intimidated by their language and display of numbers and overt acts, as he has stated, the defendant would be guilty, notwithstanding the peaceable manner of the entry in the first instance."

The jury returned a verdict of guilty, and judgment was pronounced by the Court, from which the defendant appealed.

*Attorney-General,* for the State.
*Mr. W. W. Flemming* filed a brief for defendant.

MERRIMON, J.   If the evidence be accepted as true, it is obvious that what the defendant and the other party indicted with him, did on the premises of the prosecutor, in his presence and against his expressed will, amounted to more than a simple trespass.   The evidence tended strongly to prove, that, without provocation and with concert between them, their manner and language directed towards and against the prosecutor grossly insulting and threatening, and accompanied by some demonstrations of violence, they intended to provoke a breach of the peace and to intimidate him.   He testified that he was intimidated, and his wife, who was near by, witnessing what was done and said, was greatly alarmed.   Such action and conduct constituted a forcible trespass.

The defendant cannot escape criminal responsibility upon the ground suggested on the argument here, that he went upon the premises of the prosecutor by his permission, for a peaceful and proper purpose.   There was evidence to show that he intended insult, and perhaps violence, when he went there; but be that as it may, the prosecutor was there in the peaceful possession of his own premises.   As soon, then, as the defendant and his companion began such diplay of force and threatened violence, and the prosecutor commanded them to get off his grounds, and they refused to do so, they then at once put themselves in violent opposition to him, and made forcible entry upon his premises, against his right, in such way as tended directly to produce a breach of the peace, or intimidate the prosecutor, and force him to desist from the just exercise of his rightful authority there. At first, the defendent did not get possession of the premises at all; he went upon them under the prosecutor, and by his express or implied permission—he got temporary violent possession, made forcible entry, and thus committed a forcible trespass.   It may be, he was not at first a trespasser, but he became such as soon as he put himself in forcible opposition to the prosecutor.

The instructions given the jury by the Court, were warranted by the facts.

There is no error. The the end that the judgment may be affirmed, let this opinion be certified to the Criminal Court. *It is so ordered.*

No error.　　　　　　　　　　　　　　　　Affirmed.