### STATE v. D. I. WOODWARD.

*Indictment for Forcible Trespass—Evidence, Sufficiency of.*

1. Where, in the trial of an indictment for forcible trespass, it appeared that the prosecutor's mill was placed on land leased by the defendant, with the consent and under contract with the latter that the defendant was to furnish logs to be sawed by the prosecutor at a specified price; that the defendant and his laborers destroyed the mill in the presence of the prosecutor, who protested against it; that no notice had .been given to prosecutor of defendant's intention to remove the mill, and that defendant, when asked why he did not let the prosecutor know that he was going to tear down the mill, said : "It would not have done," the owner "was in possession and would have been bad to get out;" *Held,* that it was proper to leave to the jury the question whether the defendant was guilty after determining in whom was the possession.

2. The gist of the offence of a criminal forcible trespass is that there be such an offer of violence or demonstration of force as is calculated to bring about a breach of the peace, and this may be implied, even if there be no actual violence or any fear inspired by those committing the trespass, if the person whose possession is invaded be present at any time during the commission of the act and forbidding it.

INDICTMENT for forcible trespass, tried before *Coble, J.,* and a jury, at August Term, 1896, of DUPLIN Superior Court.

The defendant was convicted and appealed. The facts appear in the opinion of Associate Justice FURCHES.

*Attorney General,* for the State.
*Messrs. Stevens & Beasley,* for defendant (appellant).

FURCHES, J.: The defendant is indicted for forcible

STATE *v.* WOODWARE.

trespass in tearing down and moving the prosecutor's steam sawmill. The mill was standing on land upon which the defendant had a lease. But it was put there with the consent of the defendant and under a contract between him and the prosecutor that he, the defendant, was to log the mill and the prosecutor was to saw the logs at specified prices. The prosecutor had quit sawing on Thursday before the mill was torn down Wednesday morning following, and was not present when the defendant and his force entered and commenced tearing down the mill. But the prosecutor came while the work of tearing down the mill was going on, and forbade defendant's "touching another splinter." And the only recognition the defendant gave this order of the prosecutor was to order the hands at work tearing down the mill to "go on," which they did, tearing up the foundation upon which the mill and engine rested, after the prosecutor got there and forbade the tearing down his. mill. The defendant had four hands besides himself (three colored men and one white man) engaged in tearing down the mill when the prosecutor got there. The prosecutor said he left while the work was going on, because he was unable to do anything more, owing to the number of persons engaged in tearing down the mill. That he was not afraid of their doing him personal injury.

There was evidence that the defendant started out to get up hands at 2 o'clock in the morning to take down the prosecutor's mill, and that defendant had not demanded possession, or notified the prosecutor to move the mill; nor had the defendant given the prosecutor notice of his purpose to tear down and move the prosecutor's mill. And one Blanchard, a witness for the State, testified that he asked the defendant why he did not let Swinson, the prosecutor, " know he was going to move the mill from the

shelter," when defendant replied, "It would not have done. Henry (meaning the prosecutor, Swinson) had possession and would have been bad to get out."

The court charged the jury fully, and in our opinion fairly, the law bearing upon the facts in the case. The charge left it to the jury to find from the evidence whether the defendant or the prosecutor, Swinson, was in possession when the defendant entered and tore down the mill, and instructed them that if the defendant was in possession he should be acquitted. He then charged the jury that, if they found that the possession of the mill was in Swinson, they would then find from the evidence whether the defendant had committed the offence of forcible trespass; that to constitute this offence " there must be such force as is calculated to provoke resistance." " The gist of the offence of forcible trespass is the high-handed invasion of the possession of another, he being present forbidding the same. If the mill was in the possession of the prosecuting witness, and if the defendant invaded the possession of the prosecuting witness in a high-handed way, and if, while the defendant was tearing down the mill and before he was through tearing it down, the prosecuting witness came and forbade the defendant; and the defendant, notwithstanding, continued to tear down the mill, and did it in a high-handed way, and used such force as was calculated and tended to provoke resistance and to excite the fears of the owner; and, if the evidence in the case satisfied the jury of these facts beyond a reasonable doubt, then they will find the defendant guilty, and if not they will acquit the defendant."

We can see no ground for the defendant's objecting to this charge. *State* v. *Davis*, 109 N. C., 809; *State* v. *Wilson*, 94 N. C., 839; *State* v. *Gray*, 109 N. C., 790; *State* v. *McAdden*, 71 N. C., 207.

There are but two exceptions : First, That the evidence did not warrant the charge given ; and second, that there was no evidence of force, fear, intimidation, or any show of either. Neither one of these exceptions can be sustained.

There is no exception to the charge, and the only question raised by the exceptions is as to whether there was any evidence, or any such evidence as authorized the court to submit the case to the jury. And as to this it seems to us there can be no doubt. It is admitted that the prosecuting witness was the owner of the mill. And while it was on land that defendant held under the lease, it was admitted that it was put there with the consent of the defendant, and under a contract that the defendant was to furnish the prosecutor with logs which the prosecuting witness was to saw for the defendant at a specified price per thousand. This at least made the prosecutor a tenant at will and entitled him to the possession, until the tenancy was terminated by notice to quit, which defendant admitted he had never given the prosecutor. But, more than this, when asked by the witness Blanchard why he did not let the prosecutor know that he was going to tear down the mill, "he said it would not have done, as Henry, the prosecutor, was in *possession* and would have been bad to get out."

So, it seems that there was evidence tending to show, if not absolutely establishing the fact, that the prosecuting witness was in possession. It may be, as this evidence was not contradicted, that the court would have been authorized to instruct the jury that if they believed this evidence, the prosecutor was in possession. But be this as it may, the judge submitted the question of possession to the jury, and left it to them to say whether the

defendant or the prosecutor was in possession, and they said the prosecutor was.

It is sometimes not easy to draw the line of demarkation between what are criminal trespasses and what are only civil trespasses. It is said that to make a forcible trespass (criminal and indictable) "there must be actual violence used, or such demonstration of force as is calculated to intimidate or *tend to a breach of the peace.* It is not necessary that the party be actually put in fear." *State* v. *Davis, supra.* This may be done by demonstration of force as by the use of weapons or by numbers, as three or more. *State* v. *Davis, supra.* The party must be present forbidding, or rather objecting to, the unlawful acts. But it is not necessary that he should be present all the time. It is sufficient if he is present before the trespass is completed. *State* v. *Gray* and *State* v. *McAdden, supra.* The reason of this is that the gist of the offence is that it *tends to the breach of the peace,* and it would be as likely to produce bad blood and a breach of the peace for the prosecutor to go upon the defendant, engaged in the act of tearing down his mill, as it would have done if he had been present when it was commenced.

And we find evidence in this case at least tending to show all these requirements,—the presence of the prosecutor before the work of tearing down the mill was completed, forbidding the defendant; the defendant's refusing to desist, "telling his hands to go on" with the work; the number required by the law to constitute a multitude, four in number besides the defendant. What could the prosecutor do but to leave the defendant and his hands engaged in their work of destruction? And, yet, the defendant says there was no evidence to go to the jury

that he is guilty of the offence of forcible trespass. We do not see the matter as the defendant sees it and, in our opinion, there was such evidence as made it the duty of the court to submit the case to the jury and to authorize a verdict of guilty. Judgment affirmed.

Affirmed.