This action was brought by the plaintiff to recover damages of defendant on account of a breach of warranty, the form of the action being that formerly known as "case." The plaintiff bought of the defendant a quantity of rice, which he alleged the defendant represented to be good seed rice, but which was in fact not good seed rice, and which failed to sprout after having been planted, although the land was well prepared. The plaintiff further alleged that it was too (231) late, after he discovered that the rice was worthless for seed, and had failed to germinate, to plant for another crop. The jury found these allegations of fact to be true. The plaintiff demanded judgment for the amount paid for the rice, for the amount he expended in preparing the land and in planting the rice, and for the amount of profit which would have been made by the plaintiff upon the anticipated crop had the rice sprouted. The following issues were submitted to the jury: (1) Was the rice sold by the defendant to the plaintiff warranted to be good seed rice? (2) If so, was it such as it was warranted to be? (3) If not, what damage has plaintiff sustained? *Page 157 
The third issue was subdivided into (1) actual damages, (2) the loss of crop. The third issue was subdivided, as is stated in the case on appeal, to make a new trial unnecessary in case the Supreme Court should hold damages of crop were too remote and speculative. The jury responded to the first issue, "Yes;" to the second, "No," and to the third (subdivision 1), "$284," and to the second subdivision, "$400," and judgment was rendered against the defendant for both amounts. The appeal of the defendant is from so much of the judgment as is contained in the amount which the jury found in response to the second subdivision of the third issue — for the loss of the crop.
The appeal, however, brings with it the question of the correctness of the submitting by his Honor of the second subdivision of the third issue; of his receiving the testimony of witnesses as to the price of rice in the fall of the year 1898, the time when the anticipated crop would have matured; and as to the average yield of rice on such land as the plaintiff's and as the plaintiff had prepared; and of his instruction to the jury on the second subdivision of third issue. That instruction was, after calling attention to the evidence and contentions of the parties, "that they would allow the plaintiff such a (232) sum as they would find from the evidence his net profit on the crop would have been if there had been no breach of the warranty. This is the sum left after deducting expenses of preparing for and working said crop, housing and marketing the same." The matter involved in his Honor's instruction to the jury is the one to which all of the defendant's other exceptions point, and the discussion of the charge is, therefore, the discussion of them all. The question for consideration and decision, then, is: Can one who sells a farm product to a purchaser, the purchaser making known at the time of the purchase that he wants the article for seed with which to plant a crop, and who guarantees that the article which he sells is good for the purposes of seeding, be made liable in damages in case of the entire worthlessness of the article for seed purposes, discovered after the land has been prepared and the seed sown, and too late to plant another crop, for such an amount as a jury might find upon the testimony of witnesses to be the value of the crop which might have been gathered if the seed had been good, and a fair crop raised? Compensation is to be made to the one who sustains an injury in his person, in his property, or in his reputation. This is a general principle underlying the law of damages. And there is another general rule to the effect that the remote consequences of an act, or conjectural consequences, do not make a person liable in damages. Damages can be recovered *Page 158 
against one only for the consequences of his act when those consequences are proximate, or natural. Great difficulty had been found in all the courts in the proper application of these general rules to the peculiar facts of particular cases, and many of the reported cases are in hopeless conflict. The correctness of his Honor's instruction is supported by two English (233) cases. Page v. Pavey, 34 Eng. Com. Law, 628, and Randall v. Raper, 96 Eng. Com. Law, 84. In the first-named case there was a breach of warranty in the sale of wheat sold for seed. The wheat did not grow as it was warranted to do, and was of no value. The plaintiff, in his action for damages, was allowed to give in evidence of what the value of the crop might have been if it had grown, with the view to make out his damages. In the other case — Randall v. Raper — the plaintiff had bought from the defendant, with warranty, a quantity of seed barley, represented to be Chevalier seed barley, and then resold it to another, who sowed it for Chevalier seed barley; and the same, not being Chevalier seed barley, produced much less and inferior crops of an inferior quality of barley than if the seed had been Chevalier seed barley. The plaintiff obligated himself to compensate his vendee to the extent of the difference between the value of the crop raised and the estimated value of what the crop of barley would have been worth if the seed had been as they had been represented to be, and then brought his action against the defendant for the amount he had paid his vendee. A verdict was had, with leave to the defendant to move to reduce it to the difference in the price between Chevalier seed barley and the seed barley which was delivered. The rule was refused. Lord Campbell said: "I am clearly of the opinion that in case the plaintiffs had paid the damages sustained by their vendees, compelled to do so for breach of a warranty similar to that given by the defendant to the plaintiffs, they would have been entitled to recover such damages as special damages in this action. It was a probable, a natural, even a necessary consequence of this seed not being Chevalier seed barley that it did not produce the expected quantity of grain. That is a consequence not depending upon the quality of the soil, but one necessarily resulting from the contract as to the quality of the seed not being performed." Erle, J., said: (234) "The question is, what amount of damages is to be given for the breach of this warranty? The warranty is that the barley sold shall be Chevalier barley. The natural consequence of the breach of such a warranty is that, the barley which has been delivered having been sown, and not being Chevalier barley, an inferior crop has been produced. This damage *Page 159 
naturally results from the breach of the warranty, and the ordinary measure of it would be the difference in value between the inferior crop produced and that which would have been produced from Chevalier barley." In the case of Van Wyck v.Allen, 69 N.Y. 61, the facts were that the defendants sold a quantity of cabbage seed to the plaintiff, representing the seed to be "Van Wycklan's Flat Dutch." The seed was well known in the market, and had a good reputation. They were sown by the plaintiff, and were totally unproductive of cabbage. It was held in that case that the law charged the defendant with a warranty that the seed sold and delivered was of the kind represented, and the plaintiff was allowed to show in damages the fair value of the crop that could have been raised had the seed been as represented. The cases in North Carolina upon this subject are not numerous, and the facts in each are so diverse that it is difficult to group any two under the same head, and they do not seem to be entirely harmonious. Under the head of remote damages, as distinguished from conjectural or uncertain damages, are Sledge v. Reid, 73 N.C. 440, and Jackson v.Hall, 84 N.C. 489. In the first of these cases the plaintiff sued the defendant, who was Sheriff of Halifax County, for wrongfully taking his mule. He was not allowed to recover for the loss of a part of his crop following the loss of the mule. It was held that such damage was not the proximate consequence of the act complained of, but was the secondary result, and therefore too remote. The Court said: "The loss of the (235) crop, though following the loss of the mule, was neither a necessary, nor natural consequence. The plaintiff might buy, or hire another, and finish his crop and because he preferred to throw out a part of the crop he is not thereby enabled to claim damages for the loss as an immediate and necessary consequence of the tort." So that point in these cases was decided against the plaintiffs because the damage was remote, and not proximate. It was not decided against them because the damage was conjectural or uncertain in the measure of it. In the case ofRoberts v. Cole, 82 N.C. 292, it appears from the case that the parties to the action agreed to build and keep in repair separate parts of a common division fence, which divided and protected their respective crops. The defendant violated his agreement, permitting his part of the fence to become rotten, whereupon hogs broke into the plaintiff's field, and injured his crop. In the trial of the case his Honor told the jury that, if the fence was intended by the parties to guard their crops from the depredations of stock, the plaintiff was entitled to whatever he had expended in the renewing of the fence, and to have damages for *Page 160 
the injury to his crops, and that the measure of his damages was the difference between what the crop undisturbed ordinarily would be, and that which was made, diminished by the breaking in of the hogs. The Court said: "While the Court below very properly declined to restrict the plaintiff's claim to compensation for defendant's breach of contract, as requested, and correctly directed the jury to estimate and allow for the ravages of the hogs, the rule by which the measure of his injury was to be ascertained was too vague and uncertain to act upon. The value of the crop made is capable of definite calculation, but what it would have made if it had not been interfered with — (236) the other element in the proposition — is and must be purely and wholly conjectural." No precedents are referred to in that opinion on the point we have been discussing; that is, upon the question of allowing the plaintiffs in actions to give in evidence the value of crops that might have been grown and reaped. Boyle v. Reeder, 23 N.C. 607; Foard v. R.R., 53 N.C. 235, and Mace v. Ramsey, 74 N.C. 11, were referred to, but they referred to the loss of the profits of a business, or adventure other than farming or planting. But inBridgers v. Dill, 97 N.C. 222, the plaintiff was allowed to show that the stock of the defendant were allowed to depredate on his growing crop, the defendant repeatedly pulling down the fencing as the plaintiff would put it up again; and that, as a consequence, his crop was greatly damaged. He said: "They destroyed all but six bales of cotton. The damages were about twenty bales — fifteen anyhow — fifty acres where I never picked out a pound; value, $50 per bale. They damaged me 75 barrels of corn, value $4 per barrel." The Court, in its instructions as to the damages, told the jury that they should not consider what the plaintiff might have raised upon the land, and that such evidence was excluded. This Court said: "The exception to the evidence of Bridgers objected to by defendant can not be sustained. The trespass was repeated as often as the plaintiff would put up his fence. It was a continued trespass, and the case is unlike that of Roberts v. Cole, 82 N.C. 292, where the damages were properly limited to such a sum as would repair and put the fence in order, and cover the injury done to the crop before the plaintiff knew of the trespass." It is difficult to distinguish the difference as to the legal principle involved between the last mentioned case and the case of Roberts v. Cole, supra. However that may be, we have concluded, (237) after mature reflection and a careful study of all these cases to which we were referred in the argument, and which we have found in our investigation, that the principle *Page 161 
down in Roberts v. Cole applies, and that the plaintiff ought not to have been allowed to recover the amount estimated as the crop of rice which might have been produced upon the land if the rice had been good seed rice.
The plaintiff did not appeal from the judgment, and, ordinarily, we would have the judgment below reformed, striking out the amount allowed for the loss of the crop, and allowing it to stand for the amount found to be due by the jury under the first subdivision of the third issue; but, as we think, under all the circumstances of the case, the plaintiff is probably entitled, under a correct rule of estimating the damage he has sustained, to a larger recovery than for the amount expended by him in the preparation and planting of the land, and the value of the rice, we think it but just to him to declare error in the instruction, and send the case back, that it may be tried anew. We think the true rule for the measure of the plaintiff's damage in this case is the amount which he paid the defendant for the rice, the amount which he expended in the preparation of the soil for the crop and for the planting or sowing of the seed, and because it was too late to plant another crop of rice he ought also to recover a reasonable rent for the land — the 47 acres — for the year 1898, subject to be reduced, however, by such amount as the defendant may be able to show that the plaintiff could have rented the land for, after it was too late to plant or sow rice, to be put in other crops than rice. The costs of this appeal to be taxed against the plaintiff.
Error.
(238)