### STATE v. CHARLES JONES ET ALS.

#### (Filed 15 December, 1915.)

**Railroads — Statute — Charter Provisions — Entry Before Condemnation — Rightful Entry—Forcible Trespass.**

A provision in the charter of a railroad company that it shall not be required to institute proceedings for the condemnation of lands prior to the time of entering thereon for the purpose of constructing its road is valid; and where the exercise of this power does not come within the exceptions of Revisal, sec. 2587, as to invading a dwelling-house, yard, etc., the entry upon the land is rightful under the terms of the statute, and does not constitute forcible trespass, though the way is fenced off by the owner, who forbids the entrance with loaded guns.

WALKER, J., dissenting.

APPEAL by defendants from *Harding, J.,* at March Term, 1915, of WILKES.

This is an indictment for forcible trespass.  The defendants, employees òf a railroad company, were engaged in· grading the right of way across the lands of Jesse Dula, brother ·of the prosecuting witness. They owned adjoining tracts of land on the southwest side of Elk Creek. The prosecuting witness also owned land on the other side of the creek, where he lived.  Before the survey for the railroad was made he executed a deed for a right of way across his land, with the stipulation that it should not run between his dwelling and Elk Creek.  In locating the road the engineers found it to be difficult to avoid locating the track between his dwelling and Elk Creek.  They therefore proposed to locate it there with a view of paying him for the right of way, since that loca-. tion was not permitted under his deed.  He obtained a restraining order against the construction of the road between his dwelling and the creek. This delayed the construction of the road, and the company abandoned that route and obtained a right of way from other parties on the south side of the creek, so as to again reach its line where it had been located beyond the prosecutor's land, on the north side.  In doing this, the company had to run over 80 to 100 feet of his land on the south side of the creek.  The prosecutor obtained a restraining order to prevent this,

which was dismissed by the judge 26 August, 1914, about a month before the trespass alleged. When the grading had gotten within 50 or 100 feet of prosecutor's line at that point he stretched a wire across the right of way, on 23 September, from a willow to a stake. This being torn down by some one, on the morning of 25 September, 1914, the day of the alleged trespass, he went to the location armed with two double-barreled shotguns and supplied with two boxes of shells. He again put up the barbed wire across the right of way, stretching it from the willow on the bank of the creek to a stake 45 feet distant. This fence inclosed nothing and was intended to inclose nothing.

The defendants, railroad employees, in going to their work on Jesse Dula's land had been in the habit of crossing the creek at the ford and then going up the creek bank without getting on the prosecutor's land. When the defendant railroad hands came to their work the morning in question the prosecutor was there with his armament and forbade them going on with the work, saying that he would kill the first man that attempted it. Walter Jones, one of the defendants, happened to come along the public road on some errand, and, seeing that trouble was likely, asked the other defendants to wait until he could get an officer to help him preserve the peace. When the officer came the foreman of the works and one of the hands proceeded to cut the wire and fill up a ditch which the prosecutor had cut as an obstruction. He forbade them to do this, and attempted to shoot, but was prevented by the officer.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*
*Finley & Hendren for the defendants.*

CLARK, C. J. Upon the evidence the court should have instructed the jury to return a verdict of not guilty.

The defendants were employees grading the right of way of the Watauga and Yadkin River Railroad Company, whose charter gave it the right to go upon land and construct its road before instituting condemnation proceedings. Its amended charter giving the above powers is chapter 11, Pr. Laws 1913, which amended the previous charter, chapter 411, Pr. Laws 1905, and contains this provision: "And said railroad company shall not be required to institute proceedings for the condemnation of lands prior to the time of entering upon the lands of any person for the purpose of constructing its line of railroad." This provision of its charter has been recently upheld in *R. R. v. Ferguson,* 169 N. C., 70.

The court was possibly misled by *S. v. Davenport,* 156 N. C., 596, where it was held that the entry into the possession of another by force,

no matter how that possession was obtained, for what purpose, or how long exercised, would make the defendants guilty. In that case the alleged trespass was on behalf of a lumber company which did not possess the right of eminent domain. But here the defendants have entered under the right of eminent domain, and the company was entitled to possession, having surveyed and located the right of way and entered thereupon for the construction of the road.

The prosecutor had been successful by his restraining order in preventing the locating of the road on his side of the creek between his dwelling and the stream. The railroad company had then changed its location of the right of way to the other side of the creek, and the restraining order against the company from using that location, which the prosecutor had sued out, had been dissolved on 26 August by the judge, who had thus upheld the legality of possession of the right of way by the railroad company. The resort of the prosecutor thereafter to his "shotgun injunction," with the accompaniment of barbed-wire entanglements and trench, could not make the possession of the railroad company illegal nor reverse the action of the judge in dissolving the restraining order.

Upon the facts in this case there was a forcible trespass, but it was not by these defendants. The prosecutor was the party liable to indictment. The right of eminent domain is in the State, and was conferred by it upon this railroad company rightfully, as the construction of a railroad is "for a public purpose." This location did not come under any of the exceptions in the statute, Revisal, 2587. It did not invade any dwelling-house, yard, kitchen, garden, or burial ground.

In refusing the motion to nonsuit there was
Error.

WALKER, J., dissenting: I cannot agree to the ruling in this case, believing it to be contrary to every case heretofore decided by this Court on the law of forcible trespass. John T. Dula was in possession of the land he claimed as his own, not being within the railroad's right of way. Whether he had title or legal claim to the land made no difference. Forcible trespass is the invasion of the possession of another violently or with a strong hand; the title is never drawn in question. The possession alone is considered. "Right to property or right of possession is not material, but only the fact of possession." *S. v. Bennett,* 20 N. C., 43; *S. v. Pollock,* 26 N. C., 305; *S. v. Toliver,* 27 N. C., 452; *S. v. McCanless,* 31 N. C., 375; *S. v. Laney,* 87 N. C., 535. Demonstrative force may be by a multitude or with weapons. *S. v. Ray,* 32 N. C., 29; *S. v. Armfield,* 27 N. C., 207; *S. v. McAdden,* 71 N. C., 207; *S. v. Barefoot,* 89 N. C., 565. The force is sufficient if party in possession must yield to avoid a breach of the peace. *S. v. Pollock,* 26 N. C., 305.

In this case the evidence is that John T. Dula was in possession of the land and had fenced it to keep intruders out. He was at least there asserting his right of possession, and not one had the right, not even in the name of the sovereign power of eminent domain, to molest him or make him afraid. If this band of men was resisted in the pursuit of a lawful purpose, they should have applied to the law for redress, and not to force and high-handed violence. This has been the law from time immemorial. It was always the law, and is the only one that can prevent lawlessness and breaches of the peace. It was ordained for that purpose, to prevent men from taking the law into their own hands.

Walter Jones, the head man, applied to an officer, Hill McNeill, it is true; but he proceeded illegally and was himself a trespasser in a criminal sense. He had no warrant, and said so, having told the prosecutor that he had none; and yet he advanced upon the latter as if he were panoplied with all the authority and was acting under the majesty of the law. And he was nothing but a plain and defiant violator of its mandate! He had no more power than any other civilian, clothed with no official authority. This makes *S. v. Yarborough,* 70 N. C., 250, directly applicable. In that case four persons with just as much, if not more, right than these defendants had, and acting under a void warrant, attempted to eject another person from land in his possession, and this Court held, and it could not have held otherwise, that they were guilty of forcible trespass or forcible entry. *S. v. Davenport,* 156 N. C., 596, is exactly in point, and is this case in principle.

I know of no law which hedges these defendants about with special privileges and immunity because they were, at the time, locating the right of way of a railroad company, or that exempts them from punishment for violating the criminal law in doing so. Neither the title to the land nor the claim of the defendants that they had a right to enter upon the land, however well founded, is in question. The offense is committed if there is actual possession by the prosecutor, or his agent, and an entry by defendant with a strong hand. *S. v. Davis,* 109 N. C., 809; *S. v. Woodward,* 119 N. C., 836; *S. v. Webster,* 121 N. C., 586; *S. v. Elks,* 125 N. C., 603; *S. v. Talbot,* 97 N. C., 494; *S. v. Lawson,* 98 N. C., 759. It is impossible to distinguish this case from *S. v. Davenport, supra,* upon any rational ground. You cannot differentiate two cases which are exactly alike—which are not only similar, but the same. The mere fact that these defendants were acting for a railroad company in delineating its right of way does not create any distinction, and certainly no difference, between the two cases, except that it makes this a stronger case, if anything, against defendants, because, inasmuch as they were acting under authority of the law, as now claimed by them, they should have been the more careful to observe and keep the law.

My conclusion is that *Judge Harding* was right in submitting the case to the jury. I am further of the opinion that the defendants were guilty on their own showing, and that the judgment should be affirmed.