STATE v. C. D. STINNETT.

(Filed 4 January, 1933.)

1. **Larceny A a—Agent of finance company repossessing truck without knowledge or consent of defaulting purchaser held not guilty of larceny.**

   A finance company owned and held a conditional sales contract on a truck, which contract provided for repossession by the company upon default of the purchaser in making any of the monthly installments on the purchase price. The purchaser defaulted in some of his payments, and an agent of the finance company saw the truck standing in the street, and without the knowledge of the purchaser drove it to a garage to be held until payment was made in accordance with the terms of the contract: *Held,* the agent of the finance company was not guilty of larceny.

2. **Trespass C a—Finance company agent's repossession of truck in absence of owner held not to constitute criminal trespass.**

   A criminal trespass involves a breach of the peace or circumstances manifestly and directly tending to it, and evidence tending to show that the agent of a finance company, which owned and held a conditional sales contract on a truck, saw the truck parked on the street, and, the owner being in default, drove the truck away in the absence of the owner and without his knowledge or consent, and took the truck to a garage to be held until payment according to the terms of the conditional sales contract, is held insufficient to establish criminal trespass on the part of the agent, and an instruction to the contrary is held for reversible error.

3. **Sales I d—Owner and holder of conditional sales contract held entitled to repossess property if taking does not involve trespass.**

   A title retaining contract of sale of a truck which gives the seller or his assignee the right to repossess the truck upon default of the purchaser to make the monthly payments in accordance with its terms, is in effect a chattel mortgage, giving the owner and holder of the conditional sales contract the right to take the property if such taking does not involve a trespass as defined by the decisions.

4. **Indictment E c—Indictment for larceny and receiving will not support conviction of driving car without knowledge or consent of owner.**

   An indictment charging larceny and receiving does not include a charge of driving a motor vehicle without the knowledge or consent of the owner, C. S., 2621(32), and a defendant charged in the indictment only with larceny and receiving may not be convicted under C. S., 2621(32).

CRIMINAL ACTION, before *Barnhill, J.,* at August Term, 1932, of ORANGE.

On 23 June, 1931, O. D. Neville purchased from the McMillan Motor Company a truck, paying therefor $150.00 in cash, and securing the

balance by the execution and delivery of a conditional sales contract providing monthly payments of $42.00 each. This contract, among other clauses, contains the following: "Time is of the essence of this contract, and if the purchaser default in complying with the terms hereof, or the seller deems the property in danger of misuse or confiscation, the seller or any sheriff or other officer of the law may take immediate possession of said property without demand (possession after default being unlawful), including any equipment, and for this purpose the seller may enter upon the premises where said property may be and remove same," etc. The contract was assigned to the General Motors Acceptance Corporation, and on 30 May, 1932, payments were in default in the sum of $84.00 as provided in the contract. On said date Neville parked the truck on a street in the town of Carrboro, N. C., in front of his residence and left the switch key in the switch. On the same day the defendant "a field representative of General Motors Acceptance Corporation," was looking for the said O. D. Neville, did not find the said Neville, but did find the said truck on the street in Carrboro in front of said Neville's home. The said Stinnett got in said truck, drove it to McMillan Motor Company's garage and there stored it. There was no one present other than the said Stinnett at the time the said truck was moved, . . . and no violence was used. The said Stinnett instructed the Motor Company to deliver the said truck to the said Neville upon payment of balance due on said contract of $159.00. On 31 May, 1932, a warrant charging the said Stinnett with the larceny of the truck was issued, and the sheriff of Orange County also took possession of the truck. The car was taken "without the knowledge or consent of Neville and driven by Stinnett from Neville's house to McMillan Motor Company's place of business, a distance of about a mile. It was taken for the purpose of enforcing the lien." The bill of indictment charged the defendant with larceny and receiving.

The trial judge instructed the jury that "you cannot return a verdict of guilty against the defendant as charged in the bill of indictment." The jury was further instructed: "However, every larceny includes and embraces a trespass, and the court charges you that if you believe the facts agreed upon, and find therefrom beyond a reasonable doubt that the prosecuting witness parked his car upon the streets of Chapel Hill, and that the defendant in the absence of the prosecuting witness, without notice to him and without his knowledge and consent, took the said car and drove it away with intent to deprive the owner of the use thereof and to have the same applied to the satisfaction of the lien of defendant's employer held thereon, the defendant would be guilty of a trespass and it would be your duty to so find."

The jury returned a verdict "guilty of trespass and operating a motor vehicle without the consent of the owner."

From judgment, imposing a fine of $25.00, the defendant appealed.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*Basil M. Watkins for defendant.*

BROGDEN, J. The agent of an automobile finance corporation, the owner and holder of a conditional sales contract covering a truck, ob- . serves the purchaser of the truck, who is in default, leave the truck in a public street in front of his residence and go into his home. Thereupon the agent steps into the truck and drives it away to a garage and proposes to hold the same for the finance company until the balance in default is paid. The foregoing fact-status produces this question of law: Does such act of the agent constitute larceny or criminal trespass as defined and contemplated by law?

The trial judge ruled correctly in holding that the facts did not constitute larceny. The bill of indictment charged larceny and receiving, and nothing more. The case proceeded to judgment upon the theory of a criminal trespass. It was said in *S. v. Woodward,* 119 N. C., 836, 25 S. E., 868: "It is sometimes not easy to draw the line of demarcation between what are criminal trespasses and what are only civil trespasses. It is said that to make a forcible trespass (criminal and indictable) 'there must be actual violence used, or such demonstration of force as is calculated to intimidate or tend to a breach of the peace. It is not necessary that the party be actually put in fear.'" The distinction between the two gave frequent concern to the judges of a former generation. For instance, *Ruffin, J.,* writing in *S. v. Mills,* 13 N. C., 420, said: "The objection to the indictment is founded on the position that at common law no trespass either on lands or chattels was indictable without breach of the peace; and that as to chattels, so the law now remains. I do not suppose, that an actual breach of the peace is necessary to make a trespass a crime. But certainly it must be something more than a mere civil injury, or that degree of force, which is expressed by the terms *vi et armis.*" *Pearson, J.,* in *S. v. McCauless,* 31 N. C., 375, said: "The gist of the offense of forcible trespass is a high-handed invasion of the actual possession of another, he being present—title is not drawn in question." *Ruffin, C. J.,* commenting upon *S. v. Mills, supra,* in *S. v. Love,* 19 N. C., 267, declared: "The Court consequently held, in *S. v. Mills,* 2 Dev., 420, that an actual breach of the peace was not necessary to render such a trespass a crime. But we held at the same time, that

to constitute it a public offense, it must appear to involve a breach of the peace, or manifestly and directly tend to it; and therefore, that at the least, the taking must be in the presence of the owner, to his terror, or against his will. .The Court is unwilling to extend the principle which has been adopted, and which must as yet be called new; or to weaken the limitation upon it which has just been mentioned, and was also acted on in the case of *McDowell and Gray,* 1 Hawks, 449. A further relaxation would render it difficult to discriminate between a civil trespass and a criminal one." Subsequent decisions adopt and sanction the view expressed by former judges. *S. v. McAdden,* 71 N. C., 207; *S. v. Laney,* 87 N. C., 535; *S. v. Conder,* 126 N. C., 985, 35 S. E., 249; *S. v. Holder,* 188 N. C., 561, 125 S. E., 113.

Moreover, it has been definitely determined that a title retaining contract of the type disclosed by the present record, is in effect a chattel mortgage. *Harris v. R. R.,* 190 N. C., 480, 130 S. E., 319. The law confers upon a mortgagee the right of possession which he may exercise before or after default, provided, of course, the taking of the property does not involve a trespass as defined by the decisions. This view was expressed in *Jackson v. Hall,* 84 N. C., 490. In that case a mortgagee seized a mule, harness and carry-all in the street without the knowledge or consent of the mortgagor. The Court said: "While the defendant invaded no right of the mortgagor in taking and keeping possession until the day of default, whether the property was or was not in danger of being lost or injured, yet he was, meanwhile, acting as trustee, bound to exercise that diligence and care expected of one in the preservation and management of his own property, and to account not only for profits actually received, but for the value of any reasonable and prudent use to which it could have been put without detriment to the property itself," etc. An examination of the foregoing decisions and others of like tenor leads to the conclusion that the instruction given by the trial judge was erroneous.

A perusal of the entire charge discloses that the jury was instructed also to consider the statute "which makes it unlawful for a person to operate a motor vehicle of another person without the knowledge and consent of the owner," etc. However, a violation of this statute, which is C. S., 2621, subsection 32, was not laid in the bill of indictment, and no person can be convicted of crime unless such crime is included in the bill. While our statute affords ample protection to purchasers of trucks and automobiles from seizure by stealth and lying in wait by agents of finance corporations, notwithstanding a defendant charged with crime in our courts, must be tried upon a proper charge properly laid and preferred.

Reversed.