W. W. LYNCH and Celestial M. Lynch, individually and as Co-Administrators of the Estate of William Richard Lynch, Deceased, and American Casualty Company, Appellees,

v.

UNITED STATES BRANCH, GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, Ltd., Appellant.

No. 9151.

United States Court of Appeals Fourth Circuit.

Argued Nov. 12, 1963.

Decided Jan. 7, 1964.

W. Laurier O'Farrell, Florence, S. C., for appellant.

Dan M. McEachin, Florence, S. C., for appellee American Casualty Co., and E. Lee Morgan, Jr., Florence, S. C. (Peter D. Hyman, Florence, S. C., on brief), for appellees Lynch.

Before BRYAN and BELL, Circuit Judges, and CRAVEN, District Judge.

PER CURIAM.

In the state court of South Carolina, plaintiffs, as co-administrators of the es-

tate of William Richard Lynch, recovered a judgment against James David Alexander in the amount of $40,000.00 for wrongful death of their intestate occurring as a result of an automobile collision. At the time of the collision, James David Alexander was driving a 1960 Chevrolet Impala automobile which he had obtained from the Bob Edwards Chevrolet Company. United States Branch, General Accident Fire & Life Assurance Corporation, Ltd., hereinafter referred to as "General Accident", was the liability carrier for Bob Edwards Chevrolet Company. American Casualty Insurance Company, hereinafter referred to as "American Casualty", was the liability insurance carrier for James David Alexander. After verdict and judgment in the state court of South Carolina, this action was begun in the district court for the Eastern District of South Carolina to secure a declaratory judgment to determine primary and secondary liability as between General Accident and American Casualty.

The district court adjudged, as a matter of law, that there was not an issue of fact to be submitted to the jury and that there was not a sale of the Impala Chevrolet by Bob Edwards Chevrolet Company, Inc., to James David Alexander; that the Impala Chevrolet was being used and driven by James David Alexander by and with the permission of Bob Edwards Chevrolet Company, Inc., at the time of the collision wherein plaintiffs' intestate met his death. The court adjudged that General Accident was primarily liable and that American Casualty was secondarily liable; from that judgment General Accident has appealed to this court.

All the evidence tends to show that Alexander went to Bob Edwards Chevrolet Company in Darlington, South Carolina, on several occasions and discussed trading his 1956 Ford automobile for the 1960 Chevrolet Impala. After trying out the Impala, the trade was agreed upon and a conditional sales contract was executed. Alexander left his Ford automobile at the place of business, Bob Edwards Chevrolet Company, agreeing to return the next day at noon bringing with him the title certificate to the Ford automobile and enough money, in addition, to make a $457.00 cash down payment. The wreck occurred the same evening before Alexander was supposed to take his Ford title certificate and make the cash down payment. No paper title was given Alexander to represent his ownership of the 1960 Impala Chevrolet. Subsequently, it was discovered that the Ford automobile belonging to Alexander, which he traded in on the Impala Chevrolet, was itself subject to a lien amounting to its entire value.

The law to be applied to the facts is that of South Carolina. Unfortunately, counsel do not call to this court's attention, nor do we find, any South Carolina decision sufficiently similar to be of controlling importance. Most of the authorities relied upon by both sides are decisions from jurisdictions other than South Carolina. The district judge relied heavily upon Wilson v. Commercial Finance Co., 239 N.C. 349, 79 S.E.2d 908. But that was a case of a buyer's giving a worthless check in payment of the price of an automobile. Treating the transaction as a *cash sale*, the North Carolina Supreme Court said:

"In the absence of an agreement to the contrary, the delivery and acceptance of a check does not constitute payment of the item covered by it until the check itself is paid by the bank on which it is drawn. * * * It necessarily follows that where the seller contracts to sell a chattel to the buyer for cash, and the seller accepts a check from the buyer as a means of payment of the cash and delivers the chattel to the buyer in the belief that the check is good and will be paid on presentation, no title whatever passes from the seller to the buyer until the check is paid; and the seller may reclaim the chattel from the buyer in case the check is not paid on due presentation."

Speaking particularly of Wilson v. Commercial Finance Co., the author of Williston on Contracts has written:

"It is submitted that such decisions (as Wilson) are unsound. The reasoning upon which they rest is that a worthless check is no payment of the price, and the condition has not happened upon which the property was to pass. But the real question is: Did the seller assent to transfer the ownership in the goods? * * *

*   *   *   *   *   *

"If a seller should say, 'You must not deal with these goods, though I have put them in your hands, until I collect the check', that would show an intent not to transfer the property to the buyer. But where the goods are put into the buyer's hands without more, it can hardly be doubted that the seller means to allow him to deal with them as his own and resell them immediately if he feels inclined. * * *

*   *   *   *   *   *

"(A)s in other cases where the seller is induced to part with his property by fraud, the voidable title of the fraudulent buyer becomes an indefeasible title upon a bona fide purchase from the fraudulent buyer." 5 Williston on Contracts, Section 732 (3d Ed. 1961).

Williston summarizes the matter as follows:

"If the goods are delivered without any permission, express or implied, to the buyer to deal with them as his own until the price is paid, the condition that payment shall be simultaneous with the transfer of title is not excused; but if the seller on delivering the goods does so without restriction, so that the buyer is violating the terms of no bargain if he uses the goods as his own, it is a *conclusion of law* that the transaction is *not* properly a *cash sale* * * *.

(I)t is what has been commonly called a *conditional sale;* * * *.

A delivery to the buyer with authority to use the goods immediately should be *conclusive evidence* of transfer of the property in the absence of clear evidence showing an intention to reserve the title." Supra, Section 733 (Emphasis added.)

In the instant case, the parties entered into a written contract plainly labeled and denominated a "conditional sale contract", containing as its first provision that the seller reserves title for the *purpose* of securing payment of the obligation hereunder and that the seller shall have a *security interest* in said property until said obligation is fully paid in cash. Such a conditional sale contract is analogous to a transfer of title to the buyer and a mortgage back by the buyer to the seller in order to secure the price. If the bargain related to real estate, it would probably take that form.

"When it relates to chattels, largely, perhaps, because the value of the subject matter of the bargain is not great enough to make desirable formalities usual with real estate, the parties as a short cut to reach the same result, generally provide that the seller shall retain title. He retains it, however, merely as security. The beneficial interest in the property, so far as is not inconsistent with the security of the seller, is vested in the buyer." Supra, Section 734.

Conditional sales contracts are, in some jurisdictions, treated as chattel mortgages. See, e. g.: State v. Stinnett, 203 N.C. 829, 832, 167 S.E. 63; Chas. Hackley Piano Co. v. Kennedy, 152 N.C. 196, 67 S.E. 488.

We think it of considerable importance that the collision occurred *prior* to the time Alexander was supposed to make the cash payment and deliver the title certificate to his Ford automobile. At the time of the collision, Bob Edwards Chevrolet Company had given up possession of the Impala Chevrolet and had granted, by the conditional sale contract, the equitable ownership of that automobile to Alexander. He was expected to

drive it and use it and treat it as his own. He had the equitable title and ownership of the Impala Chevrolet subject only to the security interest of Bob Edwards Chevrolet Company. What happened subsequently is not of controlling importance. Undoubtedly, if Alexander had not discharged the lien on his Ford so as to make out a clear title to Bob Edwards as a part of the payment, or if he had not paid the $457.00 cash, the Chevrolet Company could have repossessed the Impala Chevrolet under the conditional sale contract and divested Alexander of his equitable ownership of it. But, conversely, if Alexander had made the down payments as required by the conditional sale contract, he could have compelled title registration of the Impala in his name. We conclude that the written contract itself conclusively shows that the completed transaction was not a "cash sale" but was, instead, a "conditional sale" and that equitable title and ownership of the automobile passed upon delivery of it to Alexander, and that Bob Edwards Chevrolet Company had only a security interest in the property secured by the retention of legal title for that purpose only.

We think this conclusion is supported by an old South Carolina decision, John Frazer & Co. v. Hilliard, 2 Strob. 309, wherein the court held that any consideration which the seller agrees to accept as the price of his goods is the equivalent to the purchase price, and neither the performance of the consideration nor the payment of the purchase money can be construed into a condition precedent to any legal transfer of the goods.

The plaintiff-administrators, and American Casualty and General Accident are all agreed that the question of primary and secondary liability between the two insurance companies is to be determined by whether or not the Impala Chevrolet had been sold or transferred to Alexander so as to make it an "owned" automobile under American Casualty's policy of liability insurance upon Alexander's Ford automobile (the insured

vehicle) or whether it was a "non-owned" automobile so as to make American Casualty only secondarily liable to the coverage afforded by General Accident under its policy of insurance on the vehicles of Bob Edwards Chevrolet. It is, therefore, unnecessary to examine the underlying premises of such an agreement, and the court need not turn to the insurance policies involved.

Was the Impala Chevrolet, at the time of the collision, an "owned" automobile under American Casualty Company's policy of liability insurance upon Alexander's Ford? Or, more simply, at that time was it "owned" by Alexander? Thus does American Casualty frame the question, and it is important to note that no qualifying adjectives modify "owned".

In State Farm Mutual Automobile Insurance Co. v. Chatham, Tex.Civ. App., 318 S.W.2d 684, 688, it was held that even though title was not assigned to him until a later date, the installment purchaser of an automobile became the "owner" thereof, within the meaning of the term "owned" used in the policy, when he received possession of the vehicle. It has also been held that a policy insuring the owner of an automobile does not insure one who holds title merely for purposes of security. Merchants Mutual Casualty Co. v. Pinard, 87 N.H. 475, 183 A. 36. See: 45 C.J.S. Insurance § 829.

In Nettles v. General Accident Fire & Life Assurance Corporation, 234 F.2d 243, 247 (5th Cir. 1956), the Fifth Circuit, considering a fact situation closely similar to the one confronting this court in the instant case, said:

"Whether Fowler (purchaser) possessed a merchantable or marketable title to the vehicle is certainly not determinative of whether he was in fact the owner. All of the requisites for perfecting a contract of sale having been accomplished, we hold that Fowler, not Big Four (the dealer), was the owner of the vehicle."

Ownership in the purchaser was held to be established regardless of the fact

that he did not have a certificate of title pursuant to the Louisiana Certificate of Title Law.

There is a wide split in the cases as to whether the purchaser of an automobile under a conditional sales contract in which title is retained in the seller until the purchase price is paid has "sole and unconditional" ownership required by various kinds of insurance policies including liability insurance. See 7 Am. Jur.2d Automobile Insurance, Section 21. It has been held that where the prospective purchaser is in possession, he may be held to have an equitable title sufficient to satisfy the requirement of "unconditional and sole ownership" and the seller may be held to have lost his sole ownership interest. Pacific States Fire Insurance Co. v. Rowan Motor Co., 122 Or. 665, 260 P. 441; Borger v. Morrow, Tex.Civ.App., 87 S.W.2d 758; See: 7 Am.Jur.2d Automobile Insurance, Section 18. But the premise upon which this case was tried below is that the question of ownership alone, without the qualifying phrase "sole and unconditional", is determinative, and makes our task easier.

The way the parties have framed the question, the extent of Bob Edwards Chevrolet's "ownership" is itself irrelevant (except as it argues against Alexander's ownership) and all that matters is whether or not the Impala Chevrolet had been sold or transferred to Alexander so as to make it an "owned" automobile under American Casualty's policy of liability insurance. We hold that it had been.

■ Again, because of the way the question has been framed and tried in the court below, the result does not turn upon the greater insurable interest of Alexander who was driving the car at the time the injury was accomplished. See: 7 Am.Jur.2d Automobile Insurance, Section 13. We think that equitable ownership coupled with possession

and the right to operate the automobile is sufficient ownership to make the automobile an "owned" one within American Casualty's liability insurance policy.

The State of South Carolina has enacted a Motor Vehicle Title Act, which Act has not yet been construed by the Supreme Court of South Carolina. One of its sections provides, in substance, that a transfer by an owner is not effective until certain provisions of the new statutory law have been complied with, such as execution of an assignment of title at the time of delivery. Such words afforded American Casualty some comfort, contending as it does that title and ownership of the Impala Chevrolet never passed to its assured, James David Alexander. But those provisions are modified by the words "except * * * as between the parties". Reluctant as we are to construe a South Carolina statute which has not been construed by the Supreme Court of that state, we are compelled to do so. We go no further than necessary to decide this case.

■■ The proviso[1], we think, applies to this case and makes the statute inapplicable. It does not appear that the rights of third-party insurance carriers were intended to be governed by this statute. No transaction other than this one "between the parties", i. e., between Alexander and Bob Edwards, is involved. There was no second or subsequent transaction.

The statute relates to property rights in automobiles. The carriers assert no property interest in the 1960 Chevrolet Impala. They have none. Concededly, either Alexander or Bob Edwards (or both of them) "owned" the automobile. To solve the problem of insurance liability we are concerned only with ownership "as between" them—not as to others. Indeed, no others assert ownership.

Is there sufficient conflict in the evidence to require remand and trial by jury? We think not.

[1]. "Except * * * as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with." Section 46-150.15, Code of Laws of South Carolina (1962).

Alexander's testimony is evasive and somewhat contradictory. He acknowledged signing the conditional sales contract but also said he "never traded". But, under the parole evidence rule, that testimony is unavailing to contradict the conditional sales contract signed by him. See: 32 C.J.S. Evidence § 851 et seq. (1942).

Reversed.