STATE v. CHARLIE McCRARY.

(Filed 15 January, 1965.)

**1. Larceny § 1—**

Felonious intent as an essential element of the crime of larceny is the intent to permanently deprive an owner of his property, and a taking by trespass or by assault for the immediate temporary use of the taker and without any intent of depriving the owner permanently of his property does not constitute larceny.

**2. Larceny § 8—**

Where the State's evidence tends to show that defendant took the property of another for the taker's immediate temporary use and without any intent to deprive the owner of his property permanently, an instruction which fails to charge the jury that the requisite felonious intent was to deprive the owner permanently of its property must be held for prejudicial error.

APPEAL by defendant from *Latham, Special Judge,* August 3, 1964, Special Criminal Session of MECKLENBURG.

Appellant (McCrary) and Harold Wayne Morgan were indicted and tried for the larceny of a 1954 Ford automobile, "of the value of

more than $200.00, to wit, $400.00," the property of one Earl Jones Eudy. The jury found "each defendant guilty as charged."

As to McCrary, judgment imposing a prison sentence of not less than four nor more than seven years was pronounced. He excepted and appealed.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*
*Lila Bellar for defendant appellant.*

BOBBITT, J.   The testimony of Earl Jones Eudy, the State's principal witness, tends to show the matters set forth in the following numbered paragraphs.

1.   Eudy owned a 1954 Ford. Its fair market value was approximately $300.00.

2.   Morgan and Eudy are first cousins. Morgan and McCrary lived together, with McCrary's mother, in the Roberta community of Cabarrus County, some five miles from Concord.

3.   On July 7, 1964, about 2:30 p.m., Eudy drove his Ford to defendants' house. Then, accompanied by defendants, he drove to Concord where Morgan registered "for the Army." They returned to defendants' house.

4.   Thereafter, with Eudy driving, they went first to Concord and later to Charlotte for McCrary to pawn a radio. The radio was pawned by McCrary in Charlotte. McCrary bought one dollar's worth of gasoline. They returned to defendants' house and stayed "around there until 9:00 o'clock."

5.   Thereafter, they "went out on Newell Road," and bought "six or eight beers." McCrary said he wanted to buy a pig. Thereupon, they went to the farm of Eudy's father, looked at pigs, drank beer and "sat around there and talked."

6.   When they "started back up towards" Eudy's car, defendants said they wanted to go to Charlotte again. Eudy said he did not have enough gas and did not want to drive his car out on the road "after drinking that beer." Whereupon McCrary picked up a stick, hit Eudy on the back of his head and knocked him down twice. Morgan jumped in the car, started it, then McCrary jumped in and "they took off."

7.   A few hours later Eudy, accompanied by a brother, set out in search of his car. Eudy testified: "We went toward Roberta and before we got to Roberta they had run out of gas and they had parked

it beside the road, pulled it off in the field, and we went on up to Charlie McCrary's house and turned around in his driveway and come back to the car and raised the hood ·and took the coil wire off of it." The next day, Eudy's car was parked in McCrary's yard. Eudy "went up and got it."

Defendants' evidence is in conflict with Eudy's testimony in many respects as to incidents occurring while the three were together during the afternoon and evening of July 7th. Their testimony tends to show Eudy got drunk and abandoned his car. Further consideration of defendants' testimony is unnecessary to decision on this appeal.

Whether this prosecution was subject to dismissal as of nonsuit is not presented by appellant's assignments of error. Appellant seeks a new trial, assigning as error, *inter alia,* designated portions of the court's instructions to the jury.

"Larceny, according to the common-law meaning of the term, may be defined as the felonious taking by trespass and carrying away by any person of the goods or personal property of another, without the latter's consent and with the felonious intent *permanently* to deprive the owner of his property and to convert it to the taker's own use." (Our italics) *Auto Co. v. Insurance Co.,* 239 N.C. 416, 418, 80 S.E. 2d 35, and cases cited; *S. v. Booker,* 250 N.C. 272, 108 S.E. 2d 426; 32 Am. Jur., Larceny § 2, § 37; 52 C.J.S., Larceny § 1, § 27.

Felonious intent is an essential element of the crime of larceny. *S. v. Kirkland,* 178 N.C. 810, 101 S.E. 560; *S. v. Delk,* 212 N.C. 631, 194 S.E. 94; *S. v. Friddle,* 223 N.C. 258, 25 S.E. 2d 751. "What is meant by felonious intent is a question for the court to explain to the jury, and whether it is present at any particular time is for the jury to say." *S. v. Coy,* 119 N.C. 901, 903, 26 S.E. 120. An error prejudicial to defendant in instructions as to felonious intent is ground for a new trial. *S. v. Kirkland, supra.*

The following is from the opinion of Allen, J., in *S. v. Kirkland, supra.* "In 17 R.C.L., 5, one of the latest authorities, and reliable, defines larceny: 'As the felonious taking by trespass and carrying away of the goods of another, without the consent of the latter, and with the felonious intent *permanently* to deprive the owner of his property and to convert it to his, the taker's own use,' a definition following the decisions in our State, and which we approve with the interpretation that the intent to convert to one's own use is met by showing an intent to deprive the owner of his property *permanently* for the use of the taker, although he might have in mind to benefit another." (Our italics).

While portions of the charge to which appellant excepts define or refer to felonious intent, the intent to steal, as an intent to deprive the

owner of his property and to convert it to the taker's own use, they contain no explanation that "(t)he *animus furandi* or intent to steal is the intent of the taker to deprive the owner *permanently* of his property . . ." (Our italics). 52 C.J.S., Larceny, § 27. Moreover, no instruction was given purporting to apply this element of felonious intent to the facts in evidence.

Undoubtedly, in relation to a different factual situation, the court's instructions might be considered sufficient or nonprejudicial. In this case, however, the State's evidence indicates strongly and was ample basis for a jury finding that McCrary and Morgan, assuming they took Eudy's car without his consent, took it for their immediate temporary use and not with any intent of depriving Eudy permanently of the possession and use thereof. Appellant was entitled to an instruction that, if the jury so found, he would be entitled to a verdict of not guilty.

The record does not disclose whether McCrary or Morgan, either or both, were prosecuted for the alleged assault referred to in Eudy's testimony. Suffice to say, neither was on trial for such assault in this prosecution.

It is noted: While the State's evidence was sufficient to support a conviction for violation of G.S. 20-105, (1) defendant was not charged with such violation, and (2) a defendant may not be convicted of this statutory offense upon trial on a bill of indictment for larceny. *S. v. Stinnett,* 203 N.C. 829, 167 S.E. 63.

The original transcript and agreed case on appeal, certified to this Court by the Assistant Clerk of the Superior Court of Mecklenburg County, relates solely to the appeal (*in forma pauperis*) by McCrary. Nothing therein indicates an appeal by Morgan.

On McCrary's appeal, for the reason stated, a new trial is awarded. Hence, we do not discuss appellant's other assignments of error.

New trial.