STATE OF NORTH CAROLINA v. ROBERT ALLEN ROBERTS

No. 60

(Filed 6 January 1970)

**1. Searches and Seizures § 1; Criminal Law § 84— search and seizure incident to lawful arrest — admissibility of seized evidence**

A police officer may search the person of one whom he has lawfully arrested as an incident of such arrest and in the course of such search may lawfully take from the person arrested any property which such person has about him and which is connected with the crime charged or which may be required as evidence thereof, such article being properly introduced into evidence if otherwise competent.

**2. Narcotics § 1— possession of LSD**

It is a felony to possess lysergic acid diethylamide (LSD) in any quantity for any purpose, in the absence of proof that the possession was lawful under the provisions of the Narcotic Drug Act.

**3. Arrest and Bail § 3— arrest without warrant — likelihood of evasion of arrest — G.S. 15-41**

The likelihood of evasion of arrest, frequently referred to as the likelihood of escape, by the person to be arrested is not a factor to be considered in determining the right of a police officer to arrest without a warrant when the offense, felony or misdemeanor, has been committed in the presence of the officer, or when the officer has reasonable ground to believe that the offense has been committed in his presence by the person to be arrested. G.S. 15-41.

**4. Narcotics § 1— possession of LSD — continuing offense**

The felony of unlawful possession of lysergic acid diethylamide (LSD) is a continuing offense, committed wherever, whenever, and so long as a person has such substance in his possession, whatever the purpose of such possession.

**5. Arrest and Bail § 3— arrest without warrant — possession of LSD — reasonable belief felony being committed in officer's presence**

In this prosecution for the unlawful possession of LSD, finding by the trial court that the officers who arrested defendant had reasonable ground to believe that defendant, at the time of his arrest, was in the possession of some quantity of LSD and, therefore, was presently committing a felony in the presence of the officers, *is held* supported by the State's uncontradicted evidence that one of the officers was advised by a confidential informer, *who had on many previous occasions given the officer reliable information pertaining to narcotics*, that defendant, whose dress was described to the officer, and a male companion were in the possession of and selling LSD in the vicinity of a certain restaurant, that the officers went to a nearby building and observed defendant and his companion in the restaurant parking lot acting in a manner consistent with the information the officers had received, that this occurred about midnight, as the restaurant was closing, in an area where the officers knew narcotics had been peddled before, that the officers saw defendant and his companion

enter a nearby washerette, and that the officers entered the washerette and placed defendant and his companion under arrest without a warrant upon the charge of unlawful possession of LSD.

**6. Arrest and Bail § 3— arrest without warrant — reasonable ground for belief — reliable hearsay information**

Reasonable ground for belief, which is an element of an officer's right to arrest without a warrant under G.S. 15-41(2) and under one of the situations provided for in G.S. 15-41(1), may be based upon information given to the officer by another, the source of such information being reasonably reliable, and it is immaterial that such hearsay information is not itself competent in evidence at the trial of the person arrested.

**7. Searches and Seizures § 1; Criminal Law § 84— Fourth Amendment to U. S. Constitution — applicability to states**

Provisions of the Fourth Amendment to the United States Constitution, relating to searches and seizures, are incorporated into the Fourteenth Amendment and thus constitute limitations upon the power of state officers, as well as upon the power of Federal officers, to search and to seize articles in the possession of those suspected of criminal offenses and upon the admission of such articles into evidence in state courts.

**8. Arrest and Bail § 3; Criminal Law § 84; Searches and Seizures § 1— validity of arrest and search without warrant — admissibility of seized evidence**

No right conferred upon defendant by the United States Constitution or by the Constitution or statutes of this State was violated in the arrest and search of defendant without a warrant, in the seizure of LSD pills found upon him or in the admission of those pills in evidence, where the officers who arrested defendant had reasonable ground to believe that defendant, at the time of his arrest, was committing a felony in their presence by the possession of LSD.

APPEAL by defendant from the decision of the Court of Appeals, reported in 6 N.C. App. 312.

The defendant was tried in the Superior Court of Cumberland County under an indictment, proper in form, charging that he unlawfully and feloniously had in his possession and control 57 tablets containing lysergic acid diethylamide, commonly known as LSD. The jury found him guilty and he was sentenced to imprisonment in the State penitentiary for a term of not less than four nor more than five years. He appealed to the Court of Appeals, his only assignment of error being that the superior court erred in admitting evidence obtained without a search warrant. The evidence in question was certain pills found in the finger of a glove worn by the defendant in the course of a search of his person by the arresting officers at the time of his arrest. It was stipulated at the trial that some of the tablets so found were analyzed and each tablet analyzed contained lysergic acid diethylamide.

The Court of Appeals affirmed the judgment of the superior court. The defendant then appealed to this Court on the sole ground that his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, and under Art. I, §§ 11 and 15, of the Constitution of North Carolina, were violated by the taking of the tablets from his person and their admission in evidence.

At the trial in the superior court the State's evidence, in addition to the pills in question, consisted of the testimony of Special Agent Windham of the State Bureau of Investigation, who at the time of the arrest of the defendant was conducting narcotics investigations in Cumberland County, and Lieutenant Studer of the Fayetteville Police Department, who at the time was assigned to narcotics investigations. The defendant offered no evidence.

The testimony of the two officers before the jury was to the following effect: At approximately 11:00 p.m. on 7 January 1969, pursuant to information received by him, Agent Windham went to and entered the Hubbard Realty Company Building in Fayetteville, just across the street from the Village Shoppe Restaurant. There he met Lieutenant Studer. Their purpose in so meeting was to look for the defendant in connection with a narcotics investigation. For approximately fifteen or twenty minutes they observed the defendant and another man in a parking lot adjoining the restaurant. The defendant and his companion were seen by the officers to be "milling around the parking lot talking to several other persons." At approximately 11:20 p.m., the defendant and his companion left the parking lot and walked to and entered a washerette located approximately "two doors" from the restaurant. The officers then followed the defendant and his companion, went into the washerette and placed the defendant and his companion under arrest upon the charge of unlawful possession of narcotic drugs, advising them immediately of their "constitutional rights under the *Miranda* decision." Thereupon, Lieutenant Studer searched the defendant and found LSD in a glove worn by the defendant. At the time of the search the officers had no search warrant and no warrant for the arrest of the defendant.

As soon as Agent Windham testified to the making of the arrest and the search and before any testimony as to what the search disclosed and before the introduction of the pills in evidence, the defendant objected and thereupon the trial court conducted a voir dire examination in the absence of the jury. On that examination, Lieutenant Studer testified that he was at his home shortly before 11:00 p.m. on 7 January 1969, at which time he received information from

Agent Windham that the latter had "just received reliable information from a confidential informant" that the defendant and another man had LSD tablets in their possession and were then selling them in the vicinity of the Village Shoppe Restaurant. Agent Windham told Lieutenant Studer how the defendant was dressed. Lieutenant Studer proceeded immediately to the building across the street from the restaurant and, watching through a window, observed the defendant and his companion directly in front of the window, standing in the driveway beside the restaurant. The restaurant "was closing." The defendant was talking briefly to numerous persons in the parking lot and "milling around the persons there." The defendant and his companion then "left and walked to the Haymount Washerette." The officers "left and entered the washerette," and Lieutenant Struder placed the defendant under arrest "for unlawful possession of narcotics, LSD, and proceeded to search him." In the process of searching the defendant, Lieutenant Studer felt a hard lump in one of the gloves worn by the defendant. Looking into the glove, he found a "rubber medical fingertip with paper stuffed in the top end part." Upon pulling the paper out, he found approximately 57 small purple pills.

Upon the voir dire examination, Agent Windham testified that while he was at home he received a telephone call from a "confidential informer" with whom he had previously worked on narcotics investigations and who had on numerous occasions before this given him "good and reliable information pertaining to narcotics." This confidential informer advised Agent Windham that the defendant and another man were at that time in the vicinity of the Village Shoppe Restaurant and each of them had a quantity of LSD in his possession and they were "dealing in it" at that time. Agent Windham immediately called Lieutenant Studer and gave this information to him, requesting Lieutenant Studer to meet him in the Hubbard Building, across the street from the restaurant. Agent Windham arrived at the Hubbard Building approximately twenty minutes after he received the information from his informant. Upon arrival he found Lieutenant Studer already inside the building. Looking out of the window, he observed the defendant "talking and milling around numerous people and numerous people coming up to him." Agent Windham "had previously observed the selling of LSD and marijuana in that vicinity before that night." The actions of the defendant, while the officers were so watching him, were "similar to the actions of those selling narcotics in that area." The officers observed the defendant and his companion walk to the washerette. The officers followed them therein and Lieutenant Studer placed the

defendant under arrest "for unlawful possession of narcotics, LSD," advised the defendant and his companion "of their rights" and searched the defendant, finding the "rubber finger" containing the LSD tablets in one of the gloves the defendant was then wearing. When he received the information concerning the defendant, Agent Windham went directly to the vicinity of the Village Shoppe Restaurant, knowing that it was "almost time for the Village Shoppe to close its business and that he didn't have time to go by to get an arrest warrant."

The trial judge thereupon made the following finding: "Cuyler L. Windham, Agent of the S.B.I., had reasonable grounds to believe that a felony was being committed, and that the defendant * * * was at the place committing the felony; that he * * * had reasonable grounds to believe that unless he was apprehended and arrested that he would escape from the scene of the arrest, and that the arrest was based on reasonable belief of the officer that a felony had been and was being committed and that the arrest was legal without a warrant, and that the search of the defendant * * * was, at the instant of the arrest, and therefore was valid."

Thereupon, Lieutenant Studer testified in the presence of the jury to the arrest, the search and the finding of the LSD and the pills in question were admitted into evidence.

*Robert Morgan, Attorney General; William F. Briley, Trial Attorney; James E. Magner, Jr., Staff Attorney, for the State.*

*Nance, Collier, Singleton, Kirkman & Herndon by Rudolph G. Singleton, Jr., James R. Nance, Jr., for the defendant.*

LAKE, J.

[1] A police officer may search the person of one whom he has lawfully arrested as an incident of such arrest. *State v. Haney,* 263 N.C. 816, 140 S.E. 2d 544. In the course of such search, the officer may lawfully take from the person arrested any property which such person has about him and which is connected with the crime charged or which may be required as evidence thereof. If such article is otherwise competent, it may properly be introduced in evidence by the State. *State v. Tippett,* 270 N.C. 588, 155 S.E. 2d 269. The defendant having been placed under arrest by Lieutenant Studer upon the charge of unlawful possession of narcotics, specifically lysergic acid diethylamide, commonly known as LSD, the pills containing that substance, found upon his person and taken from him by the arresting officer in the course of a search made at the scene

of the arrest and immediately following it, were obviously competent evidence of his having committed the offense charged, if the arrest was lawful.

G.S. 90-88 provides: "It shall be unlawful for any person to * * * possess * * * any narcotic drug, except as authorized in this article [Art. 5, c. 90, General Statutes of North Carolina, entitled "Narcotic Drug Act"]." G.S. 90-87(9), defining terms used in that Act, provides, "'Narcotic drugs' means * * * lysergic acid diethylamide * * *." G.S. 90-109 provides, "In any * * * indictment, and in any action or proceeding brought for the enforcement of any provision of this article, it shall not be necessary to negative any exception * * * and the burden of proof of any such exception * * * shall be upon the defendant." G.S. 90-111(a) provides, "Any person violating any provision of this article * * * shall upon conviction be punished, for the first offense, by a fine of not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary for not more than five years, or both, in the discretion of the court." G.S. 14-1 provides, "A felony is a crime which * * * (3) is or may be punishable by imprisonment in the State's prison * * *."

[2]    Consequently, it is a felony to possess lysergic acid diethylamide in any quantity for any purpose, in the absence of proof that the possession was lawful under the provisions of the Narcotic Drug Act. This is the offense with which the defendant was charged by the arresting officer at the time of arrest and of which he has been convicted. If, therefore, the arrest of the defendant without a warrant upon this felony charge was lawful under the then existing circumstances, there was no error in the judgment imposing a sentence within the limits prescribed by the statute.

The right of a police officer to arrest a person without a warrant is set forth in G.S. 15-41, which reads as follows:

"*When Officer May Arrest Without Warrant.* — A peace officer may without warrant arrest a person:

"(1)   When the person to be arrested has committed a felony or misdemeanor in the presence of the officer, or when the officer has reasonable ground to believe that the person to be arrested has committed a felony or misdemeanor in his presence;

"(2)   When the officer has reasonable ground to believe that the person to be arrested has committed a felony and will evade arrest if not immediately taken into custody." ·

It will be observed that this statute has two independent pro-

visions. Subparagraph (1), in turn, applies to two situations, the first being where the person to be arrested has actually committed a felony or misdemeanor in the presence of the arresting officer, and the second being where, whether or not the offense has actually been committed, the officer has reasonable ground to believe that the person arrested has committed a felony or misdemeanor in his presence. Subparagraph (2) relates to the arrest of a person whom the arresting officer has reasonable ground to believe has committed a felony, irrespective of whether it is believed that such felony was committed in the presence of the arresting officer or elsewhere.

[3]    It is only in the situation to which subparagraph (2) is applicable that the statute makes it a condition to the right of the officer to arrest without a warrant that the arresing officer has reasonable ground to believe the person to be arrested will evade arrest if not immediately taken into custody. The likelihood of evasion of arrest, frequently referred to as the likelihood of escape, by the person to be arrested is not a factor to be considered in determining the right of a police officer to arrest without a warrant when the offense, felony or misdemeanor, has been committed in the presence of the officer, or when the officer has reasonable ground to believe that the offense has been committed in his presence by the person to be arrested.

[4]    The felony, of which the defendant has been convicted, is the possession of lysergic acid diethylamide. This is a continuing offense, committed wherever, whenever, and so long as a person has such substance in his possession, whatever the purpose of such possession may be. Thus, the offense with which the defendant was charged, and of which he has been convicted, was committed in the washerette, in the actual presence of the officers, whether or not it was also committed on the parking lot adjoining the Village Shoppe Restaurant.

For present purposes, we need not determine whether the right of a police officer to arrest without a warrant extends to the arrest of a person who has actually committed a felony or misdemeanor in the presence of the officer, of which actual offense the officer is unaware at the time of the arrest. For the determination of the present appeal, it is sufficient that, at the time of the arrest of this defendant, Lieutenant Studer had reasonable ground to believe the defendant was then in possession of some quantity of lysergic acid diethylamide.

[5]    The undisputed evidence in this record is clearly sufficient to support the finding by the trial judge that the arresting officer had

reasonable ground to believe that the defendant, at the time of his arrest, was in the possession of some quantity of this substance and, therefore, was presently committing a felony in the presence of these two officers. Agent Windham, some twenty minutes earlier, had been advised by a confidential informer, with whom he had previously worked in making narcotics investigations and who had on many previous occasions given Agent Windham "good and reliable information pertaining to narcotics," that the defendant and a male companion were each in possession of a quantity of lysergic acid .diethylamide and were then "dealing in it" in the vicinity of the Village Shoppe Restaurant. Lieutenant Studer was given this information by his fellow officer. Together they observed the defendant's conduct at the place named by the informer. What they saw, considered in the light of their own experience in the investigation of such offenses, confirmed, in their opinion, the information so given by the informer to Agent Windham. The departure of the defendant and his companion from the scene of their observed activities was not necessarily indicative of their having completely disposed of all of the lysergic acid diethylamide in their possession. Their departure from the parking lot was at least equally consistent with the fact, known to the officers, that the adjoining restaurant was about to close for the night. Thus, at the time the officers entered the washerette, they had reasonable ground to believe that the defendant and his companion still retained in their possession some quantity of lysergic acid diethylamide and so were, at that moment, in commission of a felony in the immediate presence of the officers. Under these circumstances, the officers clearly had the right to arrest the defendant though they had no warrant for his arrest. Having the right to arrest him, they had the right to search him and to take from him the lysergic acid diethylamide then actually concealed in a finger of the glove worn by the defendant.

While it is not necessary so to determine in the present case, it is obvious that these officers were faced with a sudden emergency, demanding immediate action and not permitting the obtaining of a warrant. The entire episode appears to have occupied not more than thirty minutes. In that interval two police officers, then at their respective homes, received reliable information that the defendant, whose dress was described to them but who does not appear otherwise to have been known to the officers, was at a public place in the possession of and dealing in lysergic acid diethylamide; the officers went to a nearby building; observed the defendant, with his companion at the place designated by the informer; saw that he was conducting himself in a manner consistent with the information the

officers had received; and then saw him and his companion leave that place and proceed along the street to another public place which they entered, all of this being at the approximate hour of midnight in an area where they knew narcotics had been peddled before. There is nothing in the record to indicate that either of the officers had ever seen the defendant before or knew where to look for him if he got out of their sight.

This case is readily distinguishable from *United States v. Coplon,* 185 F. 2d 629, relied upon by the defendant. There, the defendant was well known to the Federal Bureau of Investigation, whose agents made the arrest. She had been for years and still was an employee of the State Department in a position of importance. She had been trailed on many occasions by Federal agents because of their suspicion that she was systematically delivering confidential documents to an emissary of the government of Russia. There was nothing to indicate that the mission, on which she was engaged at the time of her arrest, was intended by her to be her last act of treachery. On the contrary, the very type of operation of which she was suspected made it a virtual certainty that she would return to her post of duty and to her known residence in Washington after the completion of her then current mission. Furthermore, her arrest on this particular occasion had been carefully planned in advance by the Federal officers. They had, for this purpose, placed in her possession a decoy document in order that she might deliver it to her Russian associate and had assigned a police matron to wait for her arrest and take her in charge when she was brought into the police headquarters. Having ample time to secure a warrant without losing sight of their quarry, the officers in the *Coplon* case failed to do so. Both as to the likelihood of evasion of arrest and as to the practicability of obtaining a warrant for arrest, the *Coplon* case bears no similarity whatever to the present case.

For the reasons above mentioned, it is not necessary, in the present case, to determine whether the conduct of the defendant, while upon the parking lot of the restaurant and under observation of the police officers from their position in the building across the street, was conduct in the presence of the officers. We are not, however, to be understood as intimating any opinion that it was not in their presence, they having the defendant in full view and being in reasonable proximity to him. See, *State v. McAfee,* 107 N.C. 812, 12 S.E. 435.

[6] It is entirely clear that the reasonable ground for belief, which is an element of the officer's right to arrest without a warrant under

subsection 2 and under one of the situations provided for in subsection 1 of G.S. 15-41, may be based upon information given to the officer by another, the source of such information being reasonably reliable. Upon this question it is immaterial that such information, being hearsay, is not, itself, competent in evidence at the trial of the person arrested. There are many instances, in the reports of the decisions of this Court and of other courts, in which the arresting officer has acted upon information that a felony has been committed and a description of the person suspected of committing it. See: *State v. Tippett, supra; State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741; *State v. Grier,* 268 N.C. 296, 150 S.E. 2d 443; *State v. Grant,* 248 N.C. 341, 103 S.E. 2d 339; 5 Am. Jur. 2d, Arrest, § 46.

In *Brinegar v. United States,* 338 U.S. 160, 175, 93 L. Ed 1879, 69 S. Ct. 1302, the Supreme Court of the United States, speaking through Mr. Justice Rutledge, said: "In dealing with probable cause * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians act." Applying that test, the Supreme Court of the United States, in *Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329, sustained the arrest without a warrant and the conviction of a defendant upon the charge of concealing and transporting narcotic drugs. In the *Draper* case, as here, the arresting officers acted upon information given them by a confidential informer previously found by the officers to be accurate and reliable. That information was that the defendant, named and described by the informer, would be arriving in Denver by train from Chicago on one of two succeeding days and would be in possession of heroin. Though the officers knew the name and residence of the person to be arrested for at least two days prior to the arrest, no warrant was obtained and there was nothing to indicate that, had he not been arrested at the railroad station, he would not have returned to his known residence. The Court held the arrest and search of Draper without a warrant were lawful and the heroin taken from his person in the process was properly admitted in evidence against him.

**[7, 8]**    The Supreme Court of the United States has declared that the provisions of the Fourth Amendment to the Constitution of the United States, relating to searches and seizures, are incorporated into the Fourteenth Amendment and thus constitute limitations upon the power of state officers, as well as upon the power of Federal officers, to search and to seize articles in the possession of those suspected of criminal offenses and upon the admission of such articles

into evidence in state courts. See: *Benton v. Maryland*, 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056; *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684. That Court has not held, however, that these amendments impose upon state officers limitations not applicable to the actions of Federal officers. The *Draper* case having sustained the authority of Federal officers to arrest and search without a warrant under the circumstances detailed above, there is nothing in the facts of the present case to support the contention of the defendant that his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States were violated by the search of his person by Lieutenant Studer and by the seizure of the lysergic acid diethylamide found in the course thereof.

[8]     Clearly, the record before us discloses, in the arrest and search of this defendant, in the seizure of the pills found upon him or in the admission of those pills in evidence, no violation of any right conferred upon him or guaranteed to him by the Constitution or statutes of this State or by any decision of this Court.

No error.