STATE OF NORTH CAROLINA v. MERRILL LANE ANDREWS

No. 8010SC1107

(Filed 19 May 1981)

1. **Searches and Seizures §§ 7, 11, 34— search of car—lawful arrest—probable cause—plain view rule**

    A gym bag containing stolen property was properly seized pursuant to a search of defendant's car incident to defendant's lawful arrest and based on probable cause where officers had a tip from a reliable informant that defendant and a companion were on their way to commit a burglary; officers followed and observed defendant and his companion in an area where many burglaries had occurred, watched defendant's car unattended on the street, and saw the companion enter the car carrying a gym bag; and officers followed the car to a stop light, stopped it, and apprehended defendant and his companion. Furthermore, the gym bag and its contents were properly seized under the plain view doctrine where stolen silver was inadvertently seen protruding from the bag when one officer reached into the car to keep it from rolling and again when another officer arrested and removed defendant's companion from the car.

2. **Burglary and Unlawful Breakings §§ 5, 10.3; Receiving Stolen Goods § 5.1— second degree burglary—larceny—possession of burglary tools—possession of stolen property—sufficiency of evidence**

    The State's evidence was sufficient for the jury in a prosecution for second degree burglary where it tended to show that defendant and a companion, acting in concert, broke into a dwelling house in the nighttime, entered with the intent to steal, and did steal items of silver belonging to the owner; no consent had been given to defendant; and defendant and his companion were soon arrested a short distance from the place of the burglary with the

State v. Andrews

stolen property. Likewise, there was ample evidence to submit the State's case to the jury on charges of felonious larceny, possession of burglary tools, and possession of stolen property.

**3. Criminal Law § 26.5— double jeopardy—punishment for larceny and possession of stolen property**

A defendant who committed larceny and thereafter continued to possess the stolen property was not placed in double jeopardy by his conviction and punishment for both larceny and felonious possession of the stolen property, since each offense contained an element not present in the other, and the crime of possession of stolen property was not a lesser included offense of larceny.

**4. Indictment and Warrant § 17.2— possession of burglary tools—variance as to date of offense**

There was no fatal variance between a bill of indictment charging possession of burglary tools on 14 March 1980 and evidence that the offense occurred on 19 March 1980 where defendant did not rely upon an alibi as a defense and time was not an essential ingredient of the offense charged. G.S. 15-155.

**5. Criminal Law § 113.7— charge on acting in concert**

The court's charge on acting in concert was supported by the evidence and did not constitute prejudicial error.

Judge CLARK dissenting.

APPEAL by defendant from *Brannon, Judge.* Judgments entered 19 June 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 13 March 1981.

Defendant was indicted and convicted of burglary in the second degree, felonious larceny, possession of burglary tools, and possession of stolen property. The state's evidence showed that the Raleigh Police Department, Wake County Sheriff's Department, and the SBI were jointly involved in a special investigation of residential burglaries. They had received reliable information from an informant about breakins in Wake, Johnston, Wilson, and New Hanover counties. The investigation focused upon defendant and his associates, one being defendant's sister who was hospitalized. Several burglaries had happened in the Hayes-Barton and Five Points area of Raleigh, involving homes of people who were also in the hospital on the same floor as defendant's sister. The officers had a list of the people on that floor of the hospital and noted those who had homes located in the suspect area. Their investigation showed that the thefts occurred around dusk, that the burglars left their car parked and walked to the house, using a pillowcase or small bag to carry the stolen articles, usually coins and silver, back to the car.

On 19 March 1980, an officer received a call from the informant telling him that defendant and Larry Rudd were leaving in defendant's car to commit a burglary. Several officers went to the Five Points area where defendant, with another man, was seen driving his car. For a time, the officers lost sight of defendant's car, but soon located it parked on the street unattended. The officers waited nearby and saw the taillights of the car come on. Rudd approached, carrying a gym bag, and entered the car. The officers followed the car as it drove away and stopped it at a red light. When the officers approached the car with drawn weapons, defendant put his hands on top of his head and his car rolled forward toward a police car. An officer reached into the car, turned off the ignition, and put the car in parking gear. In so doing, he saw the gym bag on the floor, with a shiny object on top. Another officer, in removing Rudd from the car, saw the same bag with silver protruding from the top. Defendant and Rudd were arrested and the bag was seized. Upon checking the neighborhood, the officers located a house which had been entered by breaking through a basement door. The silver in the bag was identified by a resident of the house and was offered into evidence.

Defendant did not offer evidence and appealed from the judgments imposed upon the verdicts of guilty.

*Attorney General Edmisten, by Assistant Attorney General Thomas F. Moffitt, for the State.*

*Dean & Dean, by Joseph W. Dean and Christine Witcover Dean, for defendant appellant.*

MARTIN (Harry C.), Judge.

Defendant urges prejudicial error was committed in four respects in his trial. We discuss them separately.

[1]  First, defendant contends the court erred in denying his motion to surpress as evidence the bag and its contents. He insists there was no probable cause for his arrest or for the seizure of the evidence and that the court found facts unsupported by the evidence and considered incompetent evidence. We hold there is ample evidence in the record to support the court's findings that the officers had probable cause to arrest defendant and Rudd for the commission of a felony. Without repeating the evidence, it

shows the officers had a tip from a reliable informant that defendant and Rudd were on their way to commit a burglary. They followed and observed defendant and Rudd in the area where burglaries had occurred, watched defendant's car unattended on the street, and saw Rudd approach the car carrying the bag and enter the car. They followed the car to the stoplight, stopped it, and apprehended defendant and Rudd. Where an informant is reliable, probable cause may be based upon information given to police by such informant. *State v. Roberts*, 276 N.C. 98, 171 S.E. 2d 440 (1970); *State v. Wooten*, 34 N.C. App. 85, 237 S.E. 2d 301 (1977). The evidence would warrant a reasonably prudent person in believing that the felony of burglary had been committed by defendant and Rudd. *State v. Mathis*, 295 N.C. 623, 247 S.E. 2d 919 (1978); *State v. Shore*, 285 N.C. 328, 204 S.E. 2d 682 (1974); N.C. Gen. Stat. 15A-401(b)(2)a. The arrest being lawful, a reasonable search incident thereto is lawful. *State v. Jackson*, 280 N.C. 122, 185 S.E. 2d 202 (1971).

Probable cause to search a vehicle means a reasonable ground or belief supported by circumstances sufficient to lead a person of prudence and caution to believe that defendant's car contained contraband or evidence of the commission of a crime. *State v. Phifer*, 297 N.C. 216, 254 S.E. 2d 586 (1979). It is not required to have proof beyond a reasonable doubt or even prima facie evidence of guilt; it is enough if the evidence would actuate a reasonable man acting in good faith. *Id.* The evidence here supports a conclusion that the officers had a reasonable basis for searching defendant's vehicle.

Additionally, the *stolen property* was first seen in the car within the meaning of the plain view doctrine. The officers had the right to be where they were in arresting defendant and Rudd. The discovery of the silver was inadvertent, as it was not seen until one officer reached into the car to prevent it from rolling and again when the other officer took Rudd out of the car in arresting him. Being recognized as silver, the property was immediately apparent as evidence of criminal activity under these circumstances, and it was in open, plain view. *State v. Wynn*, 45 N.C. App. 267, 262 S.E. 2d 689 (1980); *State v. Prevette*, 43 N.C. App. 450, 259 S.E. 2d 595 (1979), *disc. rev. denied*, 299 N.C. 124, *cert. denied*, --- U.S. --- , 64 L.Ed. 2d 855 (1980). Although the

officers knew the bag was in the car, they did not know that it contained evidence of a crime until they saw some of its contents by chance, or fortuitously. *Id.*

The flashlights produced pursuant to an inventory search made in accordance with standard police procedures were competent as evidence and not prejudicial to defendant. *See State v. Phifer, supra; State v. Vernon,* 45 N.C. App. 486, 263 S.E. 2d 340 (1980).

We also find the findings of fact by the court in the order denying the motion to suppress are supported by substantial competent evidence. Defendant complains that the trial judge was biased because he asked questions of the witnesses on the voir dire hearing. We do not find the judge assuming the role of prosecutor here. The questions were of a clarifying nature. *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968), *cert. denied,* 393 U.S. 1087, 21 L.Ed. 2d 780 (1969). The evidence of defendant's modus operandi was admissible. *State vs. McClain,* 282 N.C. 357, 193 S.E. 2d 108 (1972). The assignment of error to the denial of defendant's motion to suppress is overruled.

[2] The denial of his motion to dismiss constitutes defendant's next assignment of error. This assignment lacks merit. On such motion, the evidence must be considered in the light most favorable to the state, and all discrepancies or contradictions are resolved in favor of the state. The state is entitled to all reasonable inferences arising from the evidence. *State v. Witherspoon,* 293 N.C. 321, 237 S.E. 2d 822 (1977). There must be substantial evidence of every element of the offense charged. *See State v. Agnew,* 294 N.C. 382, 241 S.E. 2d 684, *cert. denied,* 439 U.S. 830, 58 L.Ed. 2d 124 (1978). On the burglary charge, the state was required to produce evidence that defendant, either alone or acting together in concert with Rudd, broke or entered a dwelling house in the nighttime without the owner's consent and did so with the intent to commit the felony of larceny therein. *State v. Jolly,* 297 N.C. 121, 254 S.E. 2d 1 (1979); N.C. Gen. Stat. 14-51. The evidence shows that defendant and Rudd, acting in concert, broke into the dwelling house of John Braman, entered with the intent to steal, and did steal items of silver belonging to Braman. No consent was given to defendant, and the events occurred in the nighttime, about 8:00 p.m., on 19 March 1980. Defendant and Rudd were soon arrested a short distance from the place of the burglary with the purloined property.

Likewise, there is ample evidence to submit the state's case to the jury on the charges of felonious larceny, possession of burglary tools, and possession of stolen property. The assignment of error is overruled.

[3] Next, defendant asserts it was error to punish him on the separate charges of felonious larceny and felonious possession of stolen property where both offenses arose out of the same fact situation. This raises the question of double jeopardy (multiple punishment for the same offense) under the federal and state constitutions. Defendant's contention is that it is necessary to possess the property being stolen in order to commit larceny and that larceny of property and the subsequent possession of it constitute a single criminal offense and permit only a single punishment.

The law concerning double jeopardy and the principles to be applied in determining whether this constitutional safeguard has been violated are succinctly set forth in *State v. Cameron*, 283 N.C. 191, 195 S.E. 2d 481 (1973), and require no extensive repetition here. There, the Court held that the basic rule in North Carolina is:

"The test of former jeopardy is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. Hence, the plea of former jeopardy, to be good, must be grounded on the 'same offense,' both in law and in fact, and it is not sufficient that the two offenses grew out of the same transaction. If evidence in support of the facts alleged in the second indictment would be sufficient to sustain a conviction under the first indictment, jeopardy attaches, otherwise not. However, if proof of an additional fact is required in the one prosecution, which is not required in the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same, and the plea of former jeopardy cannot be sustained. . . ."

*Id.* at 198, 195 S.E. 2d at 486.

Analogous arguments to defendant's have been made in cases of distribution or sale of controlled substances and possession of the same substances. The argument is that possession is a lesser

included offense of sale or distribution because one must have possession, actual or constructive, in order to sell or distribute the substance. The Supreme Court rejected the argument in *State v. Cameron, supra,* holding that possession was a continuing offense, occurring not only at the time of sale but prior thereto, and thereafter, until defendant divests himself of the substance. *See also State v. Lewis,* 32 N.C. App. 298, 231 S.E. 2d 693 (1977). In so doing, the Court stated:

> "Two things will help us in our thinking: we are not dealing with common law crimes but with statutory offenses; and not with a single *act* with two criminal labels but with *component transactions* violative of distinct statutory provisions denouncing them as crimes. Neither in fact nor law are they the same. *State v. Midgett,* 214 N.C. 107, 198 S.E. 613. They are not related as different degrees or major and minor parts of the same crime and the doctrine of merger does not apply. The incidental fact that possession goes with the transportation is not significant in law as defeating the legislative right to ban both or either. When the distinction between the offenses is considered in the light of their purpose, vastly different social implications are involved and the impact of the crime of greater magnitude on the attempted suppression of the liquor traffic is sufficient to preserve the legislative distinction and intent in denouncing each as a separate punishable offense."

283 N.C. at 199-200, 195 S.E. 2d at 486-87.

> The unlawful sale of a narcotic drug is a specific act and a given sale occurs only at one specific time. Unlawful possession, however, is a continuing violation of the law. It begins as soon as an individual first unlawfully obtains possession of the drug, whatever the purpose of that possession might be, and does not end until he divests himself of it. In this case defendant was violating the law in that he was possessing the heroin not only when he was in his house on the evening of the sale but from the time that he originally came into possession of it. This could have been one hour, one day, one week, or one month prior to the sale. The length of time makes no difference. He had been violating the law from the time he first took possession and control of the heroin. This

was a continuing offense and was not a single act which occurred at the time of the sale. *State v. Roberts*, 276 N.C. 98, 171 S.E. 2d 440 (1969).

283 N.C. at 202, 195 S.E. 2d at 488. *Cameron* is in accord with the decisions of the United States Supreme Court. *See Gore v. United States*, 357 U.S. 386, 2 L.Ed. 2d 1405 (1958); *Albrecht v. United States*, 273 U.S. 1, 71 L.Ed. 505 (1927).

The essential elements of feloniously possessing stolen property are:

(1) possession of personal property,

(2) valued at more than $400.00.

(3) which has been stolen,

(4) the possessor knowing or having reasonable ground to believe the property to have been stolen, and

(5) the possessor acting with a dishonest purpose.

*State v. Davis*, 302 N.C. 370, 275 S.E. 2d 491 (1981). *See* N.C. Gen. Stat. 14-71.1, 1979 Supp.; N.C.P.I. — Crim. 216.47.

The essential elements of felonious larceny are:

(1) the defendant took property belonging to another;

(2) the defendant carried away the property (the slightest removal is sufficient);

(3) the victim did not consent to the taking and carrying away of the property;

(4) at the time of the taking, defendant intended to deprive the victim of its use permanently;

(5) defendant knew he was not entitled to take the property; and

(6) the property was valued at more than $400.00.

*See State v. McCrary*, 263 N.C. 490, 139 S.E. 2d 739 (1965); N.C. Gen. Stat. 14-72(a), 1979 Supp.; N.C.P.I. — Crim. 216.10.

An examination of the elements of both offenses reveals the presence of an element in each offense that is not present in the other. The element of possession is different from, and not includ-

ed in, the elements of taking or carrying away required for larceny. The incidental fact that possession goes with the taking and asportation is not significant in law as defeating the legislative right to ban both or either offense. *State v. Cameron, supra.* The elements of taking and carrying away of the property are not essential to the offense of possession of stolen property. Thus, the requirements of *Blockburger v. United States*, 284 U.S. 299, 76 L.Ed. 306 (1932), that each offense requires proof of a fact which the other does not, are satisfied.

We have become advertent to *Brown v. Ohio*, 432 U.S. 161, 53 L.Ed. 2d 187 (1977), and do not find it controlling. *Brown* involved a defendant pleading guilty to a charge that he did "unlawfully and purposely take, drive or operate a . . . motor vehicle . . . without the consent of the owner," referred to as joyriding. *Id.* at 162, 53 L.Ed. 2d at 192. Upon his release from jail, he was charged that he "unlawfully did steal a . . . motor vehicle, and take, drive or operate such vehicle without the consent of the owner." *Id.* at 163, 53 L.Ed. 2d at 192. Both charges arose out of the same facts. The Supreme Court held this constituted a violation of the Double Jeopardy Clause of the Federal Constitution. Although the joyriding was alleged to have occurred on 8 December 1973 and the theft on 29 November 1973, the Court held that the Ohio statutes, as written, and construed in *Brown*, make the theft and operation of a single car a single offense. Three justices dissented. We do not find our holding and *Brown* to be inconsistent. The facts in *Brown* simply do not concern a possession case. *Brown* is analogous to an effort to try a defendant on a charge of felonious breaking or entering after he had pleaded guilty to a charge of misdemeanor breaking or entering arising on the same facts. The only difference between the charges, in both *Brown* and the breaking or entering example, is the presence or lack of felonious intent. In either case, double jeopardy principles would bar the second charge.

In the case at bar, we are concerned with two discrete offenses, larceny and the felonious possession of stolen property, the fruits of the larceny. Although we find no case directly in point, *State v. Davis, supra*, and *Cameron, supra*, impel us to the result we reach. In *Davis*, the question was whether possession of stolen property is a lesser included offense of receiving stolen property, a violation of N.C.G.S. 14-71. The Supreme Court held

State v. Andrews

that it is not. We find the Court's reasoning equally applicable here and quote:

> Although at first glance possession may seem to be a component of receiving, it is really a separate and distinct act. In analogous cases dealing with the contraband of non-taxpaid whiskey and controlled substances (rather than with the contraband of stolen property) this Court has consistently held that the crime of *possession* of such items is not a lesser included offense of the crime of *selling* or *transporting* them. *State v. Cameron,* 283 N.C. 191, 195 S.E. 2d 481 (1973) and cases therein cited. [Footnote omitted.] The Court said in *Cameron, id.* at 202, 195 S.E. 2d at 488:
>
>> "By setting out both the possession and sale as separate offenses in the statute and by prescribing the same punishment for possession and for sale, it is apparent that the General Assembly intended possession and sale to be treated as distinct crimes of equal degree, to be separately punished rather than providing that one should be a lesser included offense in the other.
>>
>> . . . .
>
> Similarly the unlawful receipt of stolen property is a single, specific act occurring at a specific time; possession, however, is a continuing offense beginning at the time of receipt and continuing until divestment. Under G.S. 14-71 the state seeks to punish the act of *receiving* stolen goods *from another;* under G.S. 14-71.1 the state seeks to punish the act of *possessing* stolen goods without regard to who might have stolen them. The punishment for both offenses is the same. We believe the legislature intended *possession* and *receiving* to be distinct, separate crimes of equal degree rather than the former to be a lesser included offense of the latter.

*Id.* at 374, 275 S.E. 2d at 494.

Paraphrasing Justice Exum in *Davis,* under N.C.G.S. 14-72, larceny, the state seeks to punish the act of stealing the property of another; under N.C.G.S. 14-71.1 the state seeks to punish the act of *possessing* stolen property without regard to who might have stolen it. Larceny is a single, specific act occurring at a specific time. Possession of stolen property, however, is a continu-

ing offense, terminating when defendant divests himself of the property. The punishment for both offenses is the same. We believe the legislature created a separate crime of equal degree with larceny when it passed N.C.G.S. 14-71.1.

The legislature's intent that possession of stolen property be a distinct crime and not a lesser included offense of larceny is found in the language of the statute itself. N.C.G.S. 14-71.1 contains the following: "[A]ny person [who possesses stolen property] . . . may be indicted and convicted, whether the felon stealing [such property] . . . *shall* or shall not have been previously convicted . . .." (Emphasis added.) It is clearly the intent of the legislature to allow the state to convict and punish a defendant for both larceny and the felonious possession of the property so stolen.

We find *Albernaz v. United States*, --- U.S. --- , 67 L.Ed. 2d 275 (decided 9 March 1981), persuasive. In *Albernaz*, defendants were convicted of conspiracy to import marijuana and conspiracy to distribute marijuana, arising from a single conspiracy. Consecutive sentences were entered. The Court held the cumulative punishment was not barred by the Double Jeopardy Clause of the Fifth Amendment. In so doing, the Court stated:

> . . . "the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishment the Legislative Branch has authorized." . . . In determining the permissibility of the imposition of cumulative punishment for the crime of rape and the crime of unintentional killing in the course of rape, the Court recognized that the "dispositive question" was whether Congress intended to authorize separate punishments for the two crimes . . . . This is so because the "power to define criminal offenses and to prescribe punishments to be imposed upon those found guilty of them, resides wholly with the Congress." . . . As we previously noted in *Brown v. Ohio*, supra, "where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishment for the same offense." . . . Thus, the question of what punishments are constitutionally permissible is not different

from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishment, imposition of such sentences does not violate the Constitution.

*Id.* at --- , 67 L.Ed. 2d at 285 (citations omitted).

The language of the felonious possession statute, discussed above, clearly places it within the rationale of *Albernaz*.

In this case, the felonious larceny ended at the latest when defendant and Rudd carried the stolen property off Braman's premises. Thereafter, defendant was committing the offense of felonious possession of stolen property. N.C. Gen. Stat. 14-71.1, 1979 Supp. It is constitutionally permissible for a defendant to be convicted and punished for both larceny and the possession of stolen property, where the defendant commits the larceny and thereafter continues to possess the stolen property. *See State v. Davis, supra; State v. Kelly*, 39 N.C. App. 246, 249 S.E. 2d 832 (1978). Defendant's assignment of error is without merit.

[4] Last, defendant attacks portions of the court's charge to the jury. He argues that because the bill of indictment charging possession of burglary tools alleged 14 March 1980, rather than 19 March 1980, as the date of the offense, a fatal variance was created and the court erred in charging the jury with respect to 19 March 1980. Defendant overlooks N.C.G.S. 15-155, which states that defects as to the time of an offense in a bill of indictment, where time is not of the essence of the offense, will not vitiate an indictment. Here, defendant does not rely upon alibi as a defense and time is not an essential ingredient of the offense. The state may and did prove that it was in fact committed on some other date. *See State v. Whittemore*, 255 N.C. 583, 122 S.E. 2d 396 (1961).

[5] The evidence in this case sustained the court's instructions on the doctrine of acting in concert by defendant and Rudd in the commission of the offenses. While perhaps not a model charge, the court's instructions on acting in concert do not constitute prejudicial error. For an approved charge on acting in concert, see *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), *death penalty vacated*, 408 U.S. 939, 33 L.Ed. 2d 761 (1972). We find no error in these instructions.

Finally, defendant argues the court erred in repeating its instructions as to larceny. In giving the final mandate with respect

to larceny, Judge Brannon mistakenly referred to "case one" as the larceny offense, whereas "case one" was actually the burglary charge. He immediately realized this mistake or *lapsus linguae,* and corrected it by telling the jury that he had completed "case one" and that he was now charging on "case two," larceny. Thereupon, the court repeated its final mandate as to larceny, properly referring to it as "case two." Rather than committing error, the court promptly removed any possible error by its immediate instructions. Such a corrected *lapsus linguae* cannot be held as error. *State v. Barnes,* 297 N.C. 442, 255 S.E. 2d 386 (1979); *State v. Foster,* 284 N.C. 259, 200 S.E. 2d 782 (1973). We hold no error resulted from this challenged instruction.

In defendant's trial, we find no prejudicial error.

No error.

Judge ARNOLD concurs.

Judge CLARK dissents.

Judge CLARK dissenting.

I believe that the law stated in the opinion of Whichard, J., in *State v. Ulysees Perry,* filed by this Court on 19 May 1981, governs the question of former jeopardy raised on this appeal.