STATE OF NORTH CAROLINA v. MARK WAYNE CARTER

No. 818SC475

(Filed 15 December 1981)

1. Larceny § 7.4— possession of recently stolen property—sufficiency of evidence
    Based upon the doctrine of recent possession, the State's evidence was
    sufficient to create a jury question as to defendant's guilt of larceny where it
    tended to show that defendant took officers to the hiding place of some stolen
    silver and later brought more of it to them. The evidence was also sufficient to
    create a jury question as to his guilt of possession of stolen property.

2. Constitutional Law § 30— violation of pretrial discovery rights
    The trial court did not abuse its discretion in failing to order a mistrial
    when an officer's testimony concerning the content of defendant's oral state-
    ment following arrest differed from the written report of that statement given
    to defendant's counsel. G.S. 15A-902(a) and G.S. 15A-910.

3. Criminal Law § 101— contact with jury—father of witness
    The trial court did not abuse its discretion in denying defendant's motion
    for a mistrial after one witness's father talked to jurors on two occasions dur-
    ing recesses as one juror who acknowledged having heard the witness's father

talk about the case was excused, and he did not speak with the other jurors about the case.

**4. Criminal Law § 126.3— juror's statement of doubt about defendant's guilt after verdict rendered**

The court properly denied defendant's motion for appropriate relief under G.S. 15A-1414 where the juror called the defense attorney the morning after the jury rendered its verdict to tell him she was not satisfied with the verdict on a larceny charge and that she felt she had been under pressure when she agreed to it as her doubts reflected nothing more than the normal jury deliberation process through which individual doubts are resolved and a group consensus is reached. G.S. 15A-1240(c)(2).

**5. Criminal Law § 26— double jeopardy—felonious larceny and felonious possession of stolen property**

By relying exclusively on the doctrine of recent possession, the State depended upon the same evidence to prove both the charge of felonious larceny and the charge of felonious possession of stolen property. Consequently, the State cannot punish defendant separately for each offense.

Judge VAUGHN concurring in part and dissenting in part

APPEAL by defendant from *Small, Judge.* Judgments entered 11 December 1980 in Superior Court, WAYNE County. Heard in the Court of Appeals 20 October 1981.

Defendant appeals from judgments entered upon convictions of felonious larceny and felonious possession of stolen goods.

*Attorney General Edmisten, by Assistant Attorney General George W. Lennon, for the State.*

*Dees, Dees, Smith, Powell & Jarrett, by Michael M. Jones, for defendant.*

WHICHARD, Judge.

Defendant was indicted and tried on charges of felonious breaking or entering, felonious larceny, and felonious possession of stolen goods.

The State's evidence tended to show that sometime between 3 July 1980 and 7 July 1980 the home of Mildred Smith Maxwell was broken and entered. Numerous pieces of silver valued at more than $400 were taken from the house. Several of the stolen silver items were located on 8 July 1980 at a local coin shop. The coin shop proprietor testified that two young men, whom she

later identified as Mike Nance and Craig Carter, had come into her shop on 7 July 1980 and attempted to sell the silver. She did not purchase the silver the first time they came in because neither young man had brought identification. The two returned later that day with defendant, and Nance used defendant's identification to sell the silver. Nance told the proprietor he had inherited the silver from his grandmother and needed to sell it to have a ring made. The proprietor paid for the silver with a check which she made payable to defendant because she used defendant's identification. Defendant signed a receipt for the silver.

A bank teller testified that three young men, identified in court as Mike Nance, Craig Carter, and defendant, came into the bank to cash the coin shop check. Nance presented the check and received the cash; defendant and Craig Carter "had backed off" from the teller's window.

An investigating officer testified that after locating the silver at the coin shop he arrested defendant and his brother and took them to police headquarters. The officer read Miranda warnings to the two. Defendant stated that he could tell the officer where some of the silver was, but that he wished to talk with his brother first. After talking with his brother for about two minutes, defendant made a statement that he would take the officer to some of the silver. He also told the officer that Nance had come to him and said he had some silver and needed someone with identification to sell it because he had no identification. Nance offered defendant $100 to sell the silver for him. Defendant took the officer to some of the stolen silver. When they were back at police headquarters the officer told defendant that some silver was still missing and asked for his help in recovering it. The following day defendant and his brother brought some silver to the officer. The officer testified that of the 21 identifiable fingerprints found on the silver 14 were positively identified as belonging to either Mike Nance or Craig Carter. The other seven prints were not identified, but none of them matched defendant's fingerprints.

Defendant called Edward Spence, an employee of Talton Jewelers, who testified that Craig Carter and Mike Nance had come to his store to sell silver and that defendant was not with them. Spence did not purchase any silver.

George Thomas Fields testified for defendant that on or about 6 July 1980 he accompanied Mike Nance and Craig Carter to a house and helped them steal some silver. Nance and Craig Carter had told Fields they had been to the house before and stolen some silver. Fields stated that defendant was first shown the silver the afternoon of 7 July 1980 when Nance told defendant he had inherited it from his grandmother. Fields stated that he gave about one-third of the stolen silver to defendant the night of the day defendant was arrested. Fields had not been charged with any offense relating to the breaking or entering and larceny.

Helen Grady testified that defendant and his brother lived with her because their mother had left them. Defendant was at her home the evening of 6 July 1980. Early that evening he played cards with her son. Defendant had been sick and was taking medication. He went to bed early and did not leave the home any time during the night.

## MOTIONS TO DISMISS

[1] Defendant assigns error to the trial court's failure to dismiss the charges against him on motions made both at the close of the State's evidence and at the close of all of the evidence. The assignments present the question whether the State offered sufficient evidence that defendant possessed the stolen goods to require submission of the charges to the jury. We hold that it did.

To obtain the conviction of larceny the State relied entirely upon the doctrine of recent possession. Under that doctrine, upon an indictment for larceny evidence of possession of recently stolen property raises an inference of the possessor's guilt of the larceny of such property which the jury may consider, together with the other evidence in the case, to determine whether the State has carried its burden of satisfying the jury of defendant's guilt beyond a reasonable doubt. *State v. Maines*, 301 N.C. 669, 273 S.E. 2d 289 (1981). The inference arises when the State shows beyond a reasonable doubt that: (1) the property described in the indictment was stolen; (2) the stolen goods were found in defendant's custody and subject to his control and disposition to the exclusion of persons not party to the crime, though not necessarily in defendant's hands or on his person as long as he had the power and intent to control them; and (3) the defendant possessed the stolen goods recently after the larceny. *Id.*

Defendant contends the State failed to produce evidence that he had custody of and power and intent to control the stolen silver sufficient to support submission of the charges to the jury under the doctrine of recent possession. The State's evidence showed that defendant took the officers to the hiding place of some of the stolen silver, and later brought more of it to them. Such evidence, though not conclusive, was sufficiently indicative of defendant's custody of and power and intent to control the stolen goods to create a jury question, based upon the doctrine of recent possession, as to his guilt of larceny. It also sufficed to create a jury question as to his guilt of possession of stolen property. The court therefore properly denied defendant's motions to dismiss the charges.

## MOTIONS FOR MISTRIAL

Defendant assigns error to the court's failure to declare a mistrial on each of two occasions during his trial. He contends his motions should have been granted for (1) prejudicial violation of his pre-trial discovery rights, and (2) jury tampering.

[2] Defendant first moved for mistrial when the officer's testimony concerning the content of defendant's oral statement following arrest differed from the written report of that statement given to defendant's counsel pursuant to his request for voluntary discovery under G.S. 15A-902(a). G.S. 15A-910 authorizes a variety of sanctions which a court may impose when it determines that a party has failed to comply with discovery. Defendant moved only for mistrial. The choice of sanction, if any, rests within the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse. *State v. Stevens*, 295 N.C. 21, 243 S.E. 2d 771 (1978). We find no abuse of discretion in the court's denial of defendant's motion.

[3] Defendant's second mistrial motion stemmed from evidence presented during voir dire that the father of witness George Thomas Fields talked to jurors on two occasions during recesses. Following the first voir dire the court questioned the jurors individually as to whether Mr. Fields spoke with them. The court excused a juror who acknowledged having heard Mr. Fields talk about the case. The second voir dire disclosed that although Mr. Fields did talk briefly to another juror, he did not talk about the case. In light of the court's action in excusing one juror because

of contact with Mr. Fields, and of the fact that Mr. Fields' second statement to a juror did not relate to the trial, we can find no abuse of discretion in the court's denial of the motion. *See State v. Johnson*, 295 N.C. 227, 244 S.E. 2d 391 (1978).

### MOTION FOR APPROPRIATE RELIEF

[4] The day after the jury rendered its verdict defendant moved for appropriate relief, pursuant to G.S. 15A-1414, based upon a statement by a juror that she had reasonable doubt of defendant's guilt of larceny. In a hearing on the motion defendant offered the testimony of this juror, who stated that she called the defense attorney the morning after the jury rendered its verdict to tell him she was not satisfied with the verdict on the larceny charge and that she felt she had been under pressure when she agreed to it. She further testified that she had expressed her doubts to the members of the jury. She also testified, however, that the jury had voted by the raising of hands; that she had raised her hand making the vote unanimous for a verdict of guilty on both counts; that she had heard the verdict read in the courtroom and had made no objection at that time; that there was no "force and coercion" outside the jury room of any type; and that "it was just the personality of the jury" which caused her to vote as she did.

Generally, after the jury renders a verdict and has been discharged, the court will not receive the testimony of jurors to impeach their verdict. *State v. Cherry*, 298 N.C. 86, 100, 257 S.E. 2d 551, 560 (1979) *cert. denied* 446 U.S. 941, 64 L.Ed. 2d 796, 100 S.Ct. 2165 (1980). G.S. 15A-1240 codified this general rule and provided exceptions as follows:

> *Impeachment of the verdict.* — (a) Upon an inquiry into the validity of a verdict, no evidence may be received to show the effect of any statement, conduct, event, or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined.

> (b) The limitations in subsection (a) do not bar evidence concerning whether the verdict was reached by lot.

> (c) After the jury has dispersed, the testimony of a juror may be received to impeach the verdict of the jury on which he served, subject to the limitations in subsection (a), only when it concerns:

(1) Matters not in evidence which came to the attention of one or more jurors under circumstances which would violate the defendant's constitutional right to confront the witnesses against him; or

(2) Bribery, intimidation, or attempted bribery or intimidation of a juror.

Defendant relies on subsection (c)(2), which allows testimony of a juror concerning intimidation. The juror's testimony contained no evidence of specific incidents of intimidation, however. It is reflective of nothing more than the normal jury deliberation process through which individual doubts are resolved and a group consensus is reached. The court therefore properly denied defendant's motion for appropriate relief.

## DOUBLE JEOPARDY

[5] Defendant finally contends the court's imposition of consecutive sentences upon convictions of felonious larceny and felonious possession of the same stolen property which was the subject of the larceny conviction violates his constitutional right not to be punished twice for the same offense. We agree.

When the State proves what could be two offenses by the same evidence, as when it proves both robbery and murder under the felony murder doctrine, it cannot punish the defendant separately for each offense. *Harris v. Oklahoma,* 433 U.S. 682, 53 L.Ed. 2d 1054, 97 S.Ct. 2912 (1977). Here the State proved both larceny and possession of stolen goods under the doctrine of recent possession by producing evidence that defendant possessed the stolen goods after the larceny took place. It offered no other evidence, direct or circumstantial, that defendant took and carried the stolen goods from the victim's home. By relying exclusively on the doctrine of recent possession, the State depended upon the same evidence to prove both the charge of felonious larceny and the charge of felonious possession of stolen property. Consequently, the State cannot punish defendant separately for each offense; and the judgment on the possession charge must be vacated and the case remanded for entry of a judgment of dismissal. *See State v. Perry,* 52 N.C. App. 48, 278 S.E. 2d 273 (1981); *but see State v. Andrews,* 52 N.C. App. 26, 277 S.E. 2d 857 (1981).

RESULT

As to the felonious larceny conviction, no error.

As to the possession of stolen property conviction, vacated and remanded for entry of judgment of dismissal.

Judge HILL concurs.

Judge VAUGHN concurs in part and dissents in part.

Judge VAUGHN concurring in part and dissenting in part:

I concur in that part of the opinion finding no error in the larceny conviction.

I dissent from that part of the opinion vacating the possession of stolen goods judgment. I would follow, in general, the reasoning in *State v. Andrews*, 52 N.C. App. 26, 277 S.E. 2d 857 (1981), and that found in the cases cited therein.